A02A2430. BLAKEY v. VICTORY EQUIPMENT SALES, INC. et al.
(576 SE2d 288)

BLACKBURN, Chief Judge.

In this action regarding the allegedly improper reporting of a defaulted loan and property repossession to credit agencies, Ronald Blakey appeals the trial court's grant of summary judgment to Victory Equipment Sales, Inc. and Navistar Financial Corporation (collectively defendants), contending that the trial court erred by: (1) considering defendants' motions for summary judgment which were

untimely pursuant to a prior consent order entered by the parties and (2) finding that there were no questions of fact regarding his claims against defendants for conversion, invasion of privacy through false light, invasion of privacy through appropriation, tortious interference with business relations, fraud, violation of Georgia's Racketeer Influenced and Corrupt Organizations (RICO) Act, ratification, mental pain and suffering, and punitive damages. For the reasons set forth below, we affirm.

1. As an initial matter, Blakey contends that the trial court erred by considering defendants' motions for summary judgment which were filed after the deadline set for such filings in a consent order entered into by the parties. We disagree.

The record shows that the parties initially entered into a consent order whereby they agreed to file motions for summary judgment by a certain date. Defendants, however, filed their motions some period of time after this date. At a status hearing which occurred prior to the hearing on the summary judgment motions, the trial court employed its discretion to extend the deadline for filing and hearing such motions for summary judgment, and Blakey has provided this Court with no evidence or citation of authority supporting his claim that the trial court erred by doing so. Court of Appeals Rule 27. As such, this enumeration is meritless.

2. Blakey contends that the trial court erred by finding that there were no questions of fact regarding his claims against defendants for: (a) conversion; (b) invasion of privacy through false light; (c) invasion of privacy through appropriation; (d) tortious interference with business relations; (e) fraud; (f) violation of Georgia's RICO Act; (g) ratification; (h) mental pain and suffering; and (i) punitive damages. Again, we disagree.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[1]

Viewed in this light, the record shows that Blakey, who owned a used car dealership, rented his car lot and sales center from Khosrow Daneshgari, whose business was adjacent to Blakey's. On June 7, 2000, Daneshgari purchased a Ford truck from Victory, fraudulently

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

using Blakey's identity as his own. Mike Bragg, an independent salesperson for Victory, supplied Daneshgari with a credit application from Miller Financial Services, a mortgage broker, which Daneshgari filled out using Blakey's name. Bragg then forwarded the application to Miller Financial, and Miller Financial, in turn, submitted the application to Navistar, the lender. The loan was ultimately approved, and Daneshgari consummated the sale in Blakey's name.

Daneshgari then failed to make payments on the loan, and the truck was repossessed on July 18, 2000. Kimberly Brooks handled the repossession for Navistar. On the day of the repossession, Blakey filed an incident report with police implicating Daneshgari. Prior to the repossession, Brooks spoke to Sergeant Johnson of the Forsyth County Sheriff's Department regarding the nature of the alleged fraud, and she testified that Sergeant Johnson stated that he believed that Blakey had participated in the fraudulent financing of the truck.

On August 2, 2000, Blakey's attorney mailed letters to Bragg, Victory, Miller Financial, and Navistar which explained the fraud and requested that the transaction be rescinded. On August 15, 2000, Brooks, on behalf of Navistar, spoke with the Forsyth County Sheriff's Department and was told that Blakey had declined to pursue charges against Daneshgari.

On August 16, 2000, Max Benkel, Blakey's original attorney in this matter, called Kristin Moran at Navistar to discuss the situation with her. Benkel requested three things at that time: (1) that Navistar not enter or pursue a deficiency judgment against Blakey; (2) that Navistar not report the repossession such that it would have an adverse bearing on Blakey's credit rating; and (3) that if Navistar had any problem with complying with these requests they would contact Benkel before taking any action. Moran agreed to these terms; however, she asked if Blakey had taken any legal action against Daneshgari. Benkel informed Moran that no legal action was going to be pursued until Blakey could terminate his landlord-tenant relationship with Daneshgari. Moran asked Benkel to notify her when such legal action had been initiated. Benkel did offer to provide Moran with an incident report that Blakey had filed with the police, but she indicated that Navistar had no need for it. Based on the belief that Blakey had actually been privy to the allegedly fraudulent transaction, Navistar reported the repossession to credit reporting agencies that same day.

Benkel next talked to Moran approximately three months later, after he had learned that Navistar had entered a deficiency against Blakey and issued a negative credit report regarding the repossession. Benkel asked Moran why Navistar had not contacted him first, and Moran explained that Navistar believed that Blakey had been

privy to the purchase of the truck and was not an innocent bystander as he professed to be.

Navistar asked for copies of a police report on numerous occasions. A police report was finally conveyed to Navistar on February 26, 2001. After receiving the police report, Navistar issued a correction letter to credit reporting agencies, on April 5, 2001, asking that the repossession be deleted from Blakey's record.

Each of Blakey's claims will be considered separately.

(a) *Conversion.* "The tort of conversion involves an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the *personal property* of another inconsistent with his rights; or an unauthorized appropriation." (Emphasis supplied.) *Parker v. Kennon.*[2] "Any distinct act of dominion wrongfully asserted over one's property in denial of his right or inconsistent with it[ ] is a conversion." (Punctuation omitted.) *Maryland Cas. Ins. Co. v. Welchel.*[3] The doctrine of conversion, however, is not applicable to this case, as there is no evidence that defendants converted any personal property of Blakey for their own use. Accordingly, the trial court appropriately granted summary judgment to defendants on this claim.

(b) *Invasion of privacy through false light.* To establish a claim of false light, a plaintiff must show the existence of false publicity that "depicts the plaintiff as something or someone which he is not." (Punctuation omitted.) *Zarach v. Atlanta Claims Assn.*[4] Next, the plaintiff must demonstrate that " 'the false light in which [he] was placed would be highly offensive to a reasonable person.' " *Thomason v. Times-Journal*[5] (" 'the hypersensitive individual will not be protected' ").

Blakey's claim must fail in this case, because he has not shown that the false information about which he complains was distributed to the public at large. In *Peacock v. Retail Credit Co.*,[6] the district court determined that the publication requirement had not been met when a credit reporting agency distributed allegedly false information to its clients.

> Plaintiff's attempt to recover . . . on the theory that the credit report amounted to a public disclosure of embarrassing private facts about him, must likewise fail, for the sim-

[2] *Parker v. Kennon*, 242 Ga. App. 627, 630 (2) (530 SE2d 527) (2000).

[3] *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261 (1) (356 SE2d 877) (1987).

[4] *Zarach v. Atlanta Claims Assn.*, 231 Ga. App. 685, 689 (3) (500 SE2d 1) (1998).

[5] *Thomason v. Times-Journal*, 190 Ga. App. 601, 604 (4) (379 SE2d 551) (1989).

[6] *Peacock v. Retail Credit Co.*, 302 FSupp. 418 (N.D. Ga. 1969).

ple reason that there has been no "public" disclosure of any information concerning plaintiff. Only clients of Retail Credit have been supplied with this information, and while this limited publication may have resulted in the denial of an insurance policy, or a denial of credit, the court holds that this is not the type of public disclosure required to establish an invasion of privacy [through false light].

Id. at 423.

In this case, the allegedly false information was reported to a credit reporting agency, not the public at large. As such, the precedent of *Peacock* is applicable here, and Blakey's claim for invasion of privacy through false light must fail.

(c) *Invasion of privacy through appropriation.* To establish invasion of privacy through appropriation, Blakey must show that defendants took his name and likeness for their own advantage. There is no evidence of record, however, that defendants ever knowingly took Blakey's identity for their purposes. To the contrary, it appears that Daneshgari committed this crime, not defendants, who merely relied on the information provided by Daneshgari.

(d) *Tortious interference with business relations.* The elements of tortious interference with contractual relations, business relations, or potential business relations are: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff. *Disaster Svcs. v. ERC Partnership*;[7] *Renden, Inc. v. Liberty Real Estate Ltd. Partnership III.*[8]

Even if we were to assume that Blakey had established all other elements of tortious interference, he has failed to offer any proof that defendants acted maliciously by reporting the repossession. Therefore, the trial court correctly granted summary judgment to defendants on this claim.

(e) *Constructive fraud.* Blakey contends that defendants committed constructive fraud by approving and acting upon the credit application filled out by Daneshgari which defendants knew or should have known was improper. "Constructive fraud consists of any act of omission or commission, contrary to legal or equitable duty, trust, or

---

[7] *Disaster Svcs. v. ERC Partnership*, 228 Ga. App. 739, 740-741 (492 SE2d 526) (1997).
[8] *Renden, Inc. v. Liberty Real Estate Ltd. Partnership III*, 213 Ga. App. 333, 334-335 (2) (444 SE2d 814) (1994).

confidence justly reposed, which is contrary to good conscience and operates to the injury of another." OCGA § 23-2-51 (b). However, constructive fraud is an equitable doctrine which will not support a claim for damages such as the one currently brought by Blakey. *Aliabadi v. McCar Dev. Corp.*[9] This enumeration, therefore, is not properly suited to the action now before us, and, as such, it is without merit.

(f) *RICO.* To establish liability for a RICO violation, one must establish a pattern of racketeering activity. See OCGA § 16-14-4. A pattern is defined as two or more similar incidents of criminal conduct. OCGA § 16-14-3 (8).

As shown by the discussion above, Blakey has failed to show two or more incidents of criminal conduct committed by defendants. Accordingly, the trial court did not err by granting summary judgment to defendants on this claim.

(g) *Ratification.* Blakey contends that Victory's and Miller Financial's negligence in failing to properly investigate the fraudulent credit application may be imputed to Navistar pursuant to OCGA § 51-2-1. This Code section provides: "For the negligence of one person to be properly imputable to another, the one to whom it is imputed must stand in such a relation or privity to the negligent person as to create the relation of principal and agent." In this case, even if we were to assume that both Victory and Miller Financial were negligent in reviewing the credit application, Blakey has provided no evidence that either company was an agent of Navistar. The trial court, as a result, properly granted summary judgment to Navistar on this claim.

(h) *Mental pain and suffering.* In essence, Blakey argues that, because Navistar reported the repossession to a credit agency after he initially told them that the credit application was fraudulent, Navistar should be held liable for the intentional infliction of emotional distress. The four elements which must be proved to sustain a claim of intentional infliction of emotional distress are: (1) the conduct must be intentional or reckless; (2) it must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. *Biven Software v. Newman.*[10] "Liability for intentional infliction of emotional distress has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

---

[9] *Aliabadi v. McCar Dev. Corp.*, 249 Ga. App. 309, 313 (1) (547 SE2d 607) (2001).
[10] *Biven Software v. Newman*, 222 Ga. App. 112 (473 SE2d 527) (1996).

regarded as atrocious, and utterly intolerable in a civilized community." (Punctuation omitted.) Id. at 113-114 (1).

Here, although the evidence shows that Navistar did report the repossession after Blakey asked them not to do so, the record also indicates that, at the time of the report, Navistar believed that Blakey had participated in the fraud. In fact, Brooks testified that, the day before the report was mailed, she had been told by a police officer that he believed that Blakey had participated in the fraud. Under these circumstances, Navistar's decision to file the report cannot be considered an act "utterly intolerable in a civilized community." Therefore, the trial court appropriately granted defendants' motion for summary judgment on this claim.

(i) *Punitive damages.* Blakey contends that the trial court erred by granting summary judgment to defendants on his claim for punitive damages. "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b).

As discussed above, there is no evidence that defendants purposefully acted to bring harm to Blakey. Accordingly, the trial court correctly granted summary judgment to defendants on Blakey's claim for punitive damages.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED DECEMBER 20, 2002.

*Adam S. Jaffe*, for appellant.

*Cohen, Pollock, Merlin, Axelrod & Small, Karen F. White, Jacob A. Razem, Kilpatrick Stockton, Michael E. Brooks, McLain & Merritt, William S. Sutton*, for appellees.