A03A2190. HABEL v. TAVORMINA et al.

(597 SE2d 645)

MIKELL, Judge.

In this breach of contract and conversion case, Lucy Habel appeals the trial court's grant of a directed verdict on her conversion and punitive damages claims. Habel also argues that the jury's verdict was against the weight of the evidence and that the defendants waived their right to assert an affirmative defense. For the reasons set forth below, we affirm.

Evidence adduced at trial shows that 81-year-old Habel was the president of We Haul It All, Inc. ("We Haul I"), a waste hauling business owned and operated by her grandson Eric Thomas. Because of Thomas's problems with depression and addiction, Thomas's friends, Christopher and Wendy Tavormina, agreed to help Thomas run the company.

In February 2001, Habel, Thomas, and Janet Wagner, Thomas's fiancée, met with the Tavorminas to discuss their business relationship. At that meeting Mr. Tavormina learned for the first time that We Haul I had filed bankruptcy. The parties agreed to form a new corporation known as We Haul It All-II, Inc. ("We Haul II"). We Haul II was to be owned by Mr. Tavormina, with Thomas eventually becoming a 50 percent partner. The parties agreed that Mr. Tavormina would manage We Haul II and that Thomas would be in charge of marketing.

---

[12] See *Marek Interior Systems v. White*, 230 Ga. App. 518, 521 (3) (496 SE2d 749) (1998).

In June 2001, Habel approached the Tavorminas about Braves season tickets that she had purchased for We Haul I. Habel had given Thomas $3,503 to purchase the tickets and she wanted to be reimbursed. The Tavorminas agreed that We Haul II would pay for the tickets provided the tickets were used for marketing purposes. We Haul II paid to Habel the sum of $1,000 on June 9, 2001; $1,300 on July 3, 2001; and $601.50 on September 7, 2001. On October 3, 2001, We Haul II issued a fourth payment to Habel in the amount of $601.50, but requested a stop payment on that check because Thomas would not make the tickets available to We Haul II. At trial, Habel testified that she was never told about the stop payment and that the tickets were in the exclusive control of Thomas. The Tavorminas testified that Thomas failed to use the tickets to promote the company.

The parties also had agreed that We Haul II would "lease" from Habel three GMC trucks that originally were used by We Haul I to haul waste. The trucks were titled in the name of We Haul I and were financed through GMAC. At Thomas's request, Habel had guaranteed the loan on the trucks. On November 15, 2001, Habel demanded that the Tavorminas return the trucks by November 16, 2001, at 5:00 p.m. The Tavorminas returned the trucks to Habel in late November 2001.

The Tavorminas eventually fired Thomas and terminated their business relationship with him. They also changed the name of We Haul II. On November 29, 2001, Habel sued the Tavorminas and We Haul II for conversion and breach of contract. Habel also sought punitive damages.

After a jury trial, the trial court directed a verdict in favor of the defendants on the conversion and punitive damages claims finding that (1) the October 3, 2001, check constituted a contract for which Habel could assert a breach of contract claim, but not a conversion claim and (2) Habel failed to prove that she owned the trucks. The trial court found that Habel could pursue a claim for breach of contract against We Haul II as a result of the stop payment order. The jury returned a verdict in favor of We Haul II on the breach of contract claim. The trial court entered judgment in favor of the defendants and denied Habel's motion for new trial. Habel appeals.

1. Habel contends that the trial court erred in directing a verdict on her claims for conversion of the check dated October 3, 2001, and the trucks "leased" by We Haul II.

> A directed verdict is proper only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the any evidence test.

(Citations omitted.) *Nunley v. Nunley,* 248 Ga. App. 208 (546 SE2d 330) (2001). See also OCGA § 9-11-50 (a).

> [C]onversion involves an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to her rights. The very essence of conversion is that the act of dominion is wrongfully asserted. Thus, if a party has a right to assert ownership, the act of dominion is not wrongful and does not constitute conversion.

(Punctuation and footnote omitted.) *Kline v. Atlanta Gas Light Co.,* 246 Ga. App. 172, 173 (538 SE2d 93) (2000). To establish a prima facie case for conversion, the plaintiff must show "title to the property [in the plaintiff], possession by the defendant, demand for possession, and refusal to surrender the property, or an actual conversion prior to the filing of the suit." (Citation and punctuation omitted.) *Taylor v. Powertel, Inc.,* 250 Ga. App. 356, 358 (2) (551 SE2d 765) (2001). See also *Buice v. Campbell,* 99 Ga. App. 334, 335 (3) (108 SE2d 339) (1959). "[A] plaintiff in a conversion action need not show he is absolute owner of the converted property; he only need show a right of action or possession in the property." *Privitera v. Addison,* 190 Ga. App. 102, 106 (5) (378 SE2d 312) (1989); *Gilbert v. Rafael,* 181 Ga. App. 460, 461 (1) (352 SE2d 641) (1987). " 'Right of possession' means either actual possession or the right to immediate possession of the property." (Citation omitted.) *Gilbert,* supra. Further, the "[r]ight to immediate possession . . . must be absolute, unconditional, and exist at the time the action is commenced." (Citation and punctuation omitted.) Id. See also *Jones v. Brown,* 108 Ga. App. 776, 780 (2) (134 SE2d 440) (1963).

(a) With regard to the check, Habel argues that the trial court erred in finding that the stop payment order was not a conversion of funds. We disagree.

In support of this argument, Habel relies on *Travelers Ins. Co. v. King,* 160 Ga. App. 473 (287 SE2d 381) (1981). In that case, the appellant insurance company issued a check in the amount of $523.61

to its insured, in payment of a collision loss under the insured's automobile insurance policy. Appellant then issued a stop payment order on the check. The insured sued appellant for its tortious conduct in ordering, without any notification or warning to the insured, that payment be stopped on the check. After a bench trial, the trial court entered judgment in favor of the insured. We affirmed, finding that the insured suffered a tortious injury independent of the insurance contract. Id. at 475 (2). We further found that,

> [a]ppellee, as the named payee on the first check, had certain recognized property rights therein. There was evidence presented at trial which would authorize the finding that appellant's actions in ordering that payment be stopped on the first check without notification or explanation to appellee were negligent, if not malicious. This certainly evidences a claim for tortious interference with appellee's property rights in the first check, if not a claim for conversion.

(Citations omitted.) Id. See also Restatement, Second, Torts § 242.

*Travelers* is distinguishable on its facts from the instant case, as the appellant in that case responded to the complaint by stating that it was ready and willing to pay $523.61 to the appellee. The appellant did not dispute the appellee's legal right to the amount of the first check. Here, the Tavorminas specifically dispute any obligation to Habel, arguing that they "had every right to stop payment on the check in view of Habel's breach of their agreement." Because there was a dispute as to whether Habel had a legal right to the $601.50, the trial court properly directed a verdict on Habel's conversion claim.

In light of this holding, we also affirm the trial court's order granting a directed verdict on Habel's claim for punitive damages.

(b) As to the trucks, Habel argues that since defendants were estopped from claiming that the trucks did not belong to Habel, the trial court erred in finding that proof of title ownership was required in order to recover for conversion of personalty. We do not agree.

In her complaint, Habel asserted that she owned the trucks. In their answer, defendants admitted that Habel was the owner. During Habel's counsel's opening statement, however, he indicated that Habel signed a guarantee for the trucks. During cross-examination, Habel admitted that she had signed a guarantee. Defendants' counsel then asked Habel if the trucks were titled in the name of We Haul I, and Habel responded, "That's what I thought until — I don't know." Counsel objected: "Your honor, in the [answer defendants] admitted that she's the owner of the trucks." Defense counsel acknowledged the admission, but asked the trial court to allow counsel to explore the issue of ownership since defense counsel raised it during his opening

statement. The trial court later granted defense counsel's motion to conform the pleadings to the evidence.

Here, Habel testified that she was not the owner of the trucks, but the guarantor of the original company's loan. Habel does not cite to any case in which a guarantor has standing to sue for conversion, nor are we aware of any. Habel argues that her position as a guarantor is similar to that of a secured creditor. We disagree. Habel's position as a guarantor is entirely different from that of a secured creditor, who has not yet foreclosed its interest in collateral. Compare *William Goldberg & Co. v. Cohen*, 219 Ga. App. 628, 640 (7) (a) (466 SE2d 872) (1995) ("a secured creditor need not have foreclosed its interest to maintain an action for conversion of its collateral. A secured creditor has a right of action for conversion if property subject to its security interest is disposed of without the creditor's authorization"). Apparently, GMAC not Habel was the secured creditor. Habel, as a guarantor, had no lien on the vehicles, no right to their possession, and no claim for conversion. Cf., e.g., *Staley v. Phelan Finance Corp.*, 116 Ga. App. 1 (156 SE2d 201) (1967) (Motor Vehicle Certificate of Title Act is sole means of perfecting a security interest in a motor vehicle).

Habel's contention that defendants' admission estopped them from claiming that the trucks did not belong to Habel is also meritless. The trial transcript clearly shows that Habel's counsel opened the door on the issue of ownership during his opening statement when he indicated that Habel signed a guarantee for the trucks. During cross-examination, counsel then questioned Habel about her attorney's statement. Despite Habel's counsel's objection to this line of questioning, counsel for defendants was entitled to explore the issue. Further, by stating during opening that Habel was a guarantor, plaintiff's counsel raised an issue not raised by the pleadings. Pursuant to OCGA § 9-11-15 (b), counsel for defendants was therefore entitled to ask the trial court to conform the pleadings to the evidence. Accordingly, since the evidence established that Habel was the guarantor rather than the owner of the trucks, the trial court did not err in directing a verdict on Habel's claim for conversion of the trucks.[1]

2. In her next enumeration of error, Habel asserts that "[defendants] made no pleading prior to trial raising the defense of failure of consideration. A failure to raise an affirmative defense prior to trial

---

[1] The outcome might be different if Habel had demanded possession of the trucks on behalf of We Haul I, of which she was the president. Even though We Haul I, or its trustee in bankruptcy, might have a valid cause of action for conversion, Habel personally has no right to recover for the alleged conversion.

waives that defense." However, Habel does not expand on this enumeration as required by Court of Appeals Rule 27 (c) (2). She provides no argument to support her conclusory statements and no citations to the record in support of this enumeration. "[I]n the absence of proper argument and corresponding citation to authority, or to the record, we will not consider this enumeration." (Punctuation and footnote omitted.) *Parrott v. Fairmont Development*, 256 Ga. App. 253, 256 (1) (c) (568 SE2d 148) (2002).

3. Finally, Habel contends that the jury's verdict in favor of We Haul II on the breach of contract claim was against the weight of the evidence presented at trial.

> Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's motion for new trial will not be disturbed.

(Citation and punctuation omitted.) *Williamson v. Harvey Smith, Inc.*, 246 Ga. App. 745, 746 (1) (542 SE2d 151) (2000). Habel alleged that the defendants breached their agreement to reimburse her for the Braves tickets. The Tavorminas testified that We Haul II agreed to pay Habel for the tickets only if Thomas used the tickets to market the company, which he did not do. In light of this testimony, we do not find that the jury's verdict was against the weight of the evidence.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED MARCH 29, 2004.

*Maurice J. Bernard III*, for appellant.
*Ralph L. Taylor III, Kimber C. Kwiatkowski*, for appellees.