A05A0456. TIDIKIS v. NETWORK FOR MEDICAL COMMUNICATIONS & RESEARCH, LLC et al.
(619 SE2d 481)

RUFFIN, Chief Judge.

After he was terminated from his employment, Frank Tidikis filed suit against his former employer, Network for Medical Communications & Research, LLC ("NMCR"), its two founders, and American Capital Strategies, Ltd., asserting multiple causes of action. The defendants moved for judgment on the pleadings, and the trial court granted the motion. Tidikis appeals. For reasons that follow, we affirm in part and reverse in part.

"On motion for judgment on the pleadings, the trial court is required to accept all well pleaded material allegations of fact as true, but need not adopt a party's legal conclusions based on these facts."[1] And, in considering such motion, the trial court may consider an exhibit contained within the pleading.[2] The granting of judgment on the pleadings "is proper only where there is a complete failure to state a cause of action or defense[,] and the movant is thus entitled to judgment as a matter of law."[3]

---

[3] *Palmer v. State*, 144 Ga. App. 480-481 (3) (241 SE2d 597) (1978).

[1] *Lewis v. Turner Broadcasting System*, 232 Ga. App. 831, 832 (2) (503 SE2d 81) (1998).

[2] See id.

[3] (Footnote omitted.) *South v. Bank of America*, 250 Ga. App. 747, 749 (551 SE2d 55) (2001).

Viewed in this manner, the complaint alleges that in July 2001, Frank Tidikis became president and chief executive officer of NMCR, a company founded by Dr. Joe Allegra and Dr. Stanley Winokur. Tidikis signed an employment contract, which provided for an initial three-year term, after which the contract would automatically renew for one-year terms.

The contract also set forth the manner in which Tidikis could be terminated. In pertinent part, the contract stated that NMCR could terminate Tidikis without cause by giving 30 days notice, but that if Tidikis was terminated in this manner, he "shall continue to receive his full base salary and . . . benefits for twelve (12) months following [his] termination." Tidikis also could be fired for cause, which the contract defined as:

> (i) Employee shall commit a felony or other act involving moral turpitude, which other act is materially detrimental to NMCR, (ii) Employee shall knowingly commit any act of prohibited conduct as set forth in Item 3 of this Agreement, (iii) Employee shall commit any act, specifically including but not limited to drug or alcohol abuse, which act is materially harmful to NMCR, (iv) intentional or gross neglect of Employee's duties, or (v) breach of any other material provision of this Agreement.

After becoming president and CEO, Tidikis received the highest possible rating in all categories of his performance evaluations.

In January 2002, American Capital Strategies ("ACS") recapitalized NMCR, thereby obtaining over 50 percent ownership interest in the company. The five person board of managers was reconstituted to give ACS a majority of managers, and ACS appointed two of its principals as well as Tidikis to serve in this capacity. Allegra and Winokur also served on the board.

As a result of the change, Tidikis signed an amendment to his employment contract that gave him various investment opportunities with NMCR. After the recapitalization, Tidikis obtained certain stock options. Tidikis also was given both the opportunity to purchase "membership units" and the right to participate in "clawback shares." Under the amended employment contract, NMCR retained the right to repurchase Tidikis' equity interest in the company for $1 per share if Tidikis either voluntarily resigned or was fired for cause.

Beginning in 2002, NMCR began negotiating with Cardinal Health for the purchase of NMCR. According to the complaint, the sale was scheduled to close in August 2003. Upon closing, Tidikis' stock options would vest, his membership units would remain intact,

and he would receive full value for his "clawback shares," or approximately $1.7 million. Furthermore, Cardinal Health indicated that it would retain the management of NMCR for at least two years following the purchase.

In March 2003, Tidikis learned of a proposed "special distribution" from NMCR to ACS. Tidikis opposed this distribution, which he believed negatively impacted NMCR and its members. Thus, Tidikis voted against the distribution, but the measure passed with him as the lone dissenter. Although Tidikis asked that the minutes from the meeting reflect his dissension, his request was not honored.

Several months later, Tidikis was informed that he was being placed on administrative leave pending an investigation of his conduct as CEO. Specifically, Tidikis was claimed to have created a hostile work environment and to have been abusive toward employees. Tidikis was subsequently terminated for cause.

Asserting that the charges against him were baseless, Tidikis filed suit against NMCR, ACS, Allegra, and Winokur, alleging, inter alia: (1) unjust enrichment; (2) conversion; (3) breach of fiduciary duty; and (4) two counts of tortious interference with contract.[4] The defendants filed a joint motion to dismiss these claims on the pleadings, which the trial court granted. This appeal ensued.

1. *Breach of Fiduciary Duty.* In the motion to dismiss, the defendants argued that Tidikis failed to show what, if any, fiduciary duty was owed to him. The defendants further argued that since they had the statutory and contractual right to terminate Tidikis, they could not be held to have breached a fiduciary duty by exercising such right. According to the defendants, Tidikis' breach of fiduciary claim is simply an attempt to circumvent the general principle that Georgia does not recognize a tort claim for "wrongful termination."

On appeal, the defendants contend that, following an alleged wrongful termination, an employee's remedy, if any, is for breach of contract. In support of this argument, the defendants cite OCGA § 34-7-1, which provides, in relevant part, that "[a]n indefinite hiring may be terminated at will by either party." The defendants also cite numerous cases holding that such at-will employees have "no viable state remedy in the form of a tort action for wrongful discharge against [their] former employer[s]."[5] Here, however, Tidikis signed a contract for a definite term, and thus does not fall within the ambit of OCGA § 34-7-1.

---

[4] Tidikis also filed suit for breach of his employment contract. The defendants did not move for judgment on the pleadings with respect to this claim, and it was not included in the trial court's order of dismissal. Thus we do not address this claim on appeal, and it remains pending.

[5] *Balmer v. Elan Corp.*, 261 Ga. App. 543, 544 (1) (a) (583 SE2d 131) (2003).

Nonetheless, under the employment contract, NMCR had the right to terminate Tidikis without cause. Thus, his situation is analogous to that of an at-will employee. "It is generally held that no liability for procuring a breach of contract exists where the breach is caused by the exercise of an absolute right — that is, an act which a man has a definite legal right to do without any qualification."[6] Since NMCR and its board members had the right to terminate Tidikis under the contract, the defendants essentially contend that Tidikis should not be able to hold the defendants liable in tort based upon his termination.

· However, there is an exception for a breach of fiduciary duty claim. As a general rule, "a breach of contract cannot constitute a tort unless a special or confidential relationship exists between the parties."[7] "[A]lthough some confidential relationships are created by law and contract (e.g., partners), others may be created by the facts of the particular case."[8] The existence of a confidential relationship is generally a jury question.[9]

Tidikis argues that Allegra and Winokur, who recruited him, are bound by his employment contract, which contains a clause purporting to establish a confidential relationship. Specifically, the clause provides that the "parties acknowledge and agree that a fiduciary and confidential relationship has commenced and will continue to exist between them and that said relationship will continue during the term of this Agreement." Given this language purporting to establish a confidential relationship, we cannot say that Tidikis completely failed to state a cause of action for breach of fiduciary duty.[10] Accordingly, the trial court erred in granting the defendants' motion for judgment on the pleadings with respect to this claim.[11]

2. *Unjust Enrichment.* In his complaint, Tidikis alleges that the defendants, "[b]y terminating [him], divesting [him] of his options and Clawback Shares, and denying [him] the full value of his membership units, . . . unjustly enriched themselves in an amount to be proven at trial." In phrasing the complaint in this manner, Tidikis apparently is treating the unjust enrichment claim like a tort — e.g.,

---

[6] (Punctuation omitted.) *A. L. Williams & Assoc. v. Faircloth*, 259 Ga. 767, 769 (2) (c) (386 SE2d 151) (1989).

[7] *Monroe v. Bd. of Regents &c. of Ga.*, 268 Ga. App. 659, 661 (1) (602 SE2d 219) (2004).

[8] *Cochran v. Murrah*, 235 Ga. 304, 306 (219 SE2d 421) (1975).

[9] See *Middleton v. Troy Young Realty*, 257 Ga. App. 771, 773 (a) (572 SE2d 334) (2002).

[10] See *Gibbs v. Dodson*, 229 Ga. App. 64, 67 (1) (492 SE2d 923) (1997) (summary judgment on breach of fiduciary claim improper where "agreement on its face establishes the parties' intent that there would be a continuing fiduciary relationship").

[11] See *Norris v. Robertson*, 223 Ga. App. 115, 117 (1) (476 SE2d 860) (1996).

the defendants violated his legal right to property interests.[12] However, a claim for unjust enrichment is not a tort, but an alternative theory of recovery if a contract claim fails.[13]

"The theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated."[14] Here, any benefit conferred on the defendants was triggered by a provision in the contract, the validity of which neither Tidikis nor the defendants challenge. Under these circumstances, the unjust enrichment claim fails as a matter of law.[15] It follows that the trial court properly granted the defendants' motion for judgment on the pleadings with respect to this claim.

3. *Conversion.* In his complaint, Tidikis alleges that by terminating him, divesting him of his various stock options and investment interests, and attempting to purchase his membership units for $1 per share, the "Defendants — individually, or in conspiracy with each other — have converted such personal property by misappropriating and exercising the right of ownership over such personal property in hostility to [Tidikis'] rights."

As this Court recently reiterated,

[c]onversion involves an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to [his] rights. The very essence of conversion is that the act of dominion is wrongfully asserted. Thus, if a party has a right to assert ownership, the act of dominion is not wrongful and does not constitute conversion.[16]

Here, the only manner in which the defendants may have assumed ownership over the stock options and other investment interests is through the employment contract, which authorized such assumption. Thus, Tidikis is arguably trying to create a tort cause of

---

[12] See OCGA § 51-1-1, which defines a tort as "the unlawful violation of a private legal right other than a mere breach of contract, express or implied."

[13] See, e.g., *Fed. Ins. Co. v. Westside Supply Co.*, 264 Ga. App. 240, 247-248 (8) (590 SE2d 224) (2003); *Smith Svc. Oil Co. v. Parker*, 250 Ga. App. 270, 272 (4) (549 SE2d 485) (2001); *Watson v. Sierra Contracting Corp.*, 226 Ga. App. 21, 28 (c) (485 SE2d 563) (1997) (physical precedent only).

[14] (Punctuation omitted.) *Smith Svc. Oil*, supra.

[15] See *Bonem v. Golf Club of Ga.*, 264 Ga. App. 573, 578-579 (3) (591 SE2d 462) (2003) (plaintiff entitled to summary judgment on defendant's counterclaim for unjust enrichment where dispute governed by legal contract).

[16] (Punctuation omitted.) *Habel v. Tavormina*, 266 Ga. App. 613, 615 (1) (597 SE2d 645) (2004).

action from breach of contract claim.[17] However, in *Schoenbaum Ltd. Co. v. Lenox Pines*, this Court held that although "a tort action cannot be based on the breach of a contractual duty only, it can be based on conduct which, in addition to breaching a duty imposed by contract, also breaches a duty imposed by law."[18] In that case, we found that the breach of a fiduciary duty gave rise to a conversion claim in addition to the breach of contract claim. As discussed in Division 1, Tidikis arguably has a viable breach of fiduciary duty claim.[19] Given the possible breach of fiduciary duty claim, the trial court erred in granting the defendants' motion for judgment on the pleadings on Tidikis' conversion claim.

4. *Tortious Interference.* In order to establish a claim for tortious interference with contractual relations or potential business relations, Tidikis must allege the following elements:

(1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.[20]

Moreover, "in order to be liable for tortious interference, one must be a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract."[21] "The exercise of an absolute legal right is not and cannot be considered an interference with a contractual or potential contractual relationship," because privilege includes legitimate economic interests of the defendant or a legitimate relationship of the alleged interloper or meddler to the contract.[22] Accordingly, if the defendant has a legitimate economic interest in either the contract or a party to the contract, then the defendant is not a stranger to the contract and acts with privilege.[23]

---

[17] See *Monroe*, supra; *Morris v. Nat. Western Life Ins. Co.*, 208 Ga. App. 443, 445 (2) (430 SE2d 813) (1993) (an action for conversion "does not lie on account of a mere failure to pay money due under a contract").

[18] 262 Ga. App. 457, 467 (6) (585 SE2d 643) (2003).

[19] See id. (summary judgment on conversion claim inappropriate where plaintiff alleged a breach of fiduciary duty claim in addition to a breach of contract claim).

[20] (Punctuation omitted.) *Blakey v. Victory Equip. Sales*, 259 Ga. App. 34, 38 (2) (d) (576 SE2d 288) (2002).

[21] *Atlanta Market Center Mgmt. Co. v. McLane*, 269 Ga. 604, 610 (503 SE2d 278) (1998).

[22] *Disaster Svcs. v. ERC Partnership*, 228 Ga. App. 739, 742 (492 SE2d 526) (1997).

[23] Id. at 741.

Where a defendant has a financial interest in one of the parties to the contract or in the contract, the defendant is not a stranger to the contract or business relationship, even though it is not a signatory to the contract.[24]

(a) *Tortious Interference with Employment Contract by ACS.* According to Tidikis' complaint, ACS tortiously interfered with his employment contract by inducing NMCR to terminate him. However, the complaint also alleges that ACS is the majority shareholder in NMCR. Accordingly, ACS has a financial interest in one of the parties to the contract, and it is not a stranger to the employment contract. Under these circumstances, the trial court did not err in dismissing this count.[25]

(b) *Tortious Interference with Prospective Employment by ACS.* Tidikis also alleges that ACS interfered with his prospective employment with Cardinal Health, which Tidikis claims would have retained him following its purchase of NMCR. However, there is no evidence that Tidikis had an employment offer from Cardinal Health. Tidikis merely anticipated that he would be retained. Under these circumstances, it is clear that Tidikis' claim is predicated on ACS' termination of him from his job at NMCR. Thus, his claim fails because ACS was not a stranger to the employment contract.[26]

5. *Leave to Amend.* Finally, Tidikis argues that, "[a]t a minimum, the trial court should have allowed [him] leave to amend [the complaint]" rather than dismiss the tort claims. As noted by the defendants, however, "[a] party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order."[27] Here, Tidikis does not allege that the trial court *prevented* him from amending his complaint. And he cites no evidence that the trial court actually refused to permit such amendment. "The burden is upon the party alleging error to show it affirmatively in the record."[28] Given Tidikis' failure to establish error, this allegation presents no basis for reversal.

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Barnes, J., concur.*

---

[24] *Renden, Inc. v. Liberty Real Estate Ltd. Partnership III*, 213 Ga. App. 333, 336 (2) (b) (444 SE2d 814) (1994).

[25] *Cox v. City of Atlanta*, 266 Ga. App. 329, 333 (1) (596 SE2d 785) (2004) (" '(p)roof that (the defendant) was no stranger to the business relations at issue is fatal to (the plaintiff's) claim of tortious interference with business relations' ").

[26] See id.

[27] OCGA § 9-11-15 (a).

[28] (Punctuation omitted.) *Perimeter Realty v. GAPI, Inc.*, 243 Ga. App. 584, 591 (4) (533 SE2d 136) (2000).

## On Motion For Reconsideration.

On motion for reconsideration, the defendants challenge our ruling that Tidikis' conversion claim survived the defendants' motion for judgment on the pleadings. According to the defendants, the membership units, "Clawback Shares," and stock options are intangible, and thus cannot be the subject of a conversion claim as a matter of law. We disagree.

The Supreme Court recently addressed a similar argument in *Decatur Auto Center v. Wachovia Bank*.[29] In that case, the Supreme Court was presented with the issue of whether a conversion claim could be brought against a bank that paid a check notwithstanding the existence of a stop-payment order. In holding that such cause of action can be maintained, the Supreme Court noted that "[c]onversion of a document, such as a check, promissory note, or negotiable instrument, includes 'the full value of the intangible rights identified with' the document."[30] In other words, if a document represents an exact value, a claim may be held for conversion of such document.

Here, the parties are merely at the pleading stage, and the record has not been fully developed as to the nature of the various documents that Tidikis alleges the defendants have converted. Thus, we are unable to conclude that the documents lack definite value such that the defendants are entitled to judgment as a matter of law on the conversion claim.[31]

In the alternative, the defendants request that the conversion claim against NMCR and ACS be dismissed. In our ruling, we predicated the continued viability of the conversion claim on the existence of the breach of fiduciary duty claim. According to the defendants, Tidikis did not allege a breach of fiduciary duty claim against NMCR. The defendants further assert that Tidikis abandoned his breach of fiduciary duty claim against ACS.

With respect to NMCR, we agree that Tidikis' failure to allege a breach of fiduciary duty claim against this defendant is fatal to his conversion claim against it. Accordingly, the trial court did not err in granting summary judgment as to this defendant. The same cannot be said with respect to ACS, however.[32] In support of its assertion that Tidikis abandoned its claim, the defendants cite to page one of the appellee's original brief. This page contains only the conclusory

---

[29] 276 Ga. 817 (583 SE2d 6) (2003).

[30] Id. at 820.

[31] See *South*, supra.

[32] In his response to defendants' motion for reconsideration, Tidikis denies that he abandoned his claim against ACS.

statement that the claim has been abandoned, but provides no further elucidation, which precludes our consideration of this argument.[33]

DECIDED MAY 6, 2005 —
RECONSIDERATION GRANTED JULY 29, 2005.

*Kirkley & Hawker, Dorothy Y. Kirkley, Thomas L. Hawker*, for appellant.
*Jackson Lewis, Stephen X. Munger, L. Dale Owens*, for appellees.

---

[33] See *Habel*, supra at 618 (2).