**FIRST DIVISION
BARNES, P. J.,
GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 23, 2023**

# In the Court of Appeals of Georgia

A21A1060. UNITED SCIENCES, LLC et al. v. KELLETT et al.

A21A1061. SHARPE v. KELLETT et al.

GOBEIL, Judge.

This multiparty litigation concerns the control of a limited liability company, United Sciences, LLC. As relevant here, in the first appearance of this case before this Court, *United Sciences, LLC v. Kellett*, 361 Ga. App. XXIX (Case Nos. A21A1060, A21A1061) (October 7, 2021) (unpublished) ("*United Sciences I*"), we affirmed the trial court's ruling that OCGA § 9-11-41's two-dismissal provision barred certain claims brought by Wess Eric Sharpe, United Sciences' former Manager, against Robert R. Joseph and his law firm, Hill, Kertscher & Wharton, LLP ("HKW"), and Michael R. Smith and his law firm, King & Spalding, LLP ("KS"). Slip Op. at 20-26. On September 20, 2022, the Supreme Court of Georgia vacated Division 5 of *United*

*Sciences I* (pertaining to the two-dismissal rule), and remanded the case to this Court for reconsideration of that division in light of the Supreme Court's decision in *Joyner v. Leaphart*, 314 Ga. 1 (875 SE2d 729) (2022).[1] For the reasons explained more fully below, we affirm.

The underlying facts in this dispute are set forth in *United Sciences I* as follows:

> [I]n 2011, Samuel Kellett, Jr. hired Sharpe to provide consulting services to Kellett, Jr.'s company, ShapeStart Measurement Systems, Inc., which would eventually become United Sciences. United Sciences' primary product was an ear-scanning technology called "Otoscan" used in the development of hearing aids and related products. In March 2012, Kellett, Jr. and Sharpe executed an employment agreement naming Sharpe as CEO of United Sciences.
>
> Sharpe briefly resigned from United Sciences in 2012, but agreed to return, contingent upon the execution of a new operating agreement which he believed offered him certain protections from removal. As a

---

[1] Divisions 1, 2, and 3 of our opinion in *United Sciences I* pertain to Case No. A21A1060. In *United Sciences I*, we affirmed in part, vacated in part, and remanded Case No. A21A1060 with direction. Slip Op. at 28. The Supreme Court denied the petition for certiorari in Case No. A21A1060. Slip Op. at 11-19. Divisions 4, 5, 6, and 7 of *United Sciences I* relate to Case No. A21A1061. Slip Op. at 19-28. Because the Supreme Court's writ of certiorari is limited to Division 5 of *United Sciences I*, and the remaining divisions (1-4 and 6-7) are not inconsistent with *Joyner*, those divisions stand unchanged.

result, Kellett, Jr. and Sharpe entered into an Operating Agreement (the "Operating Agreement") for United Sciences that stipulated that the company would be "manager-managed" and would have a Board of Directors consisting of five members, with Kellett, Jr. acting as Chairman. Sharpe would serve as a Director on the Board, the CEO and Manager of United Sciences, and he would retain a seat on the Board as long as he owned three percent of the company. United Sciences'[ ] counsel, Robert Joseph, drafted this new Operating Agreement.

Per the Operating Agreement, Sharpe could be removed as a Director only for "cause," defined as including a conviction for a crime of moral turpitude. Sharpe could be removed as Manager with or without cause, but such removal would require notice to Sharpe and his presence at the Board meeting where such a removal would take place, and all Directors would need to be present at the meeting.

[According to Sharpe], throughout 2012 and 2013, Kellett, Jr. began to undermine Sharpe's leadership of United Sciences and took actions to enrich himself and the Kellett family. For example, . . . Kellett, Jr. hired an executive assistant without Sharpe's approval and accessed United Sciences' funds for his personal use. Kellett, Jr. also entered into a debt financing agreement with his father, [Samuel] Kellett, Sr., to provide additional funding to United Sciences. Sharpe was unaware of additional terms added to the financial deal that would allow Kellett, Sr. to acquire United Sciences if the company were ever to go into default. By the end of 2013, Sharpe was convinced that Kellett, Jr. was attempting to raid

3

United Sciences for his and Kellett, Sr.'s benefit. Sharpe believed that Kellett, Jr. would resort to any means necessary to oust him as Manager.

On January 31, 2014, Kellett, Jr. called a Board meeting and announced plans to schedule another Board meeting for February 3, 2014. The agenda for the February 3 meeting included the possibility of removing Sharpe as Manager of United Sciences. Sharpe voiced his opposition to this plan and accused Kellett, Jr. of self-dealing and violating the Operating Agreement. Suspecting [United Sciences' counsel] Joseph had divided loyalties between United Sciences and Kellett, Jr., Sharpe terminated Joseph as the company's counsel, and appointed a new attorney to represent the company at the February 3 meeting. Sharpe refused to attend the February 3 meeting, noting that the Operating Agreement prevented his removal unless he was present.

At the February 3 meeting, . . . Kellett, Jr. stated to the Board that Sharpe had a 1986 felony conviction for aggravated assault, of which Kellett, Jr. had only recently learned; he also claimed that Sharpe misrepresented his educational background. The Board voted to approve Sharpe's removal as United Sciences' Manager, Director, and CEO.

Following Sharpe's removal, Sharpe alleged that Kellett, Jr. and other Board members made misrepresentations to United Sciences' minority shareholders about the timing of Sharpe's disclosure of his conviction. . . . Kellett, Jr. and other majority shareholders also allegedly failed to pay employees and vendors, undermined deals, and diluted the equity of owners . . . of United Sciences by issuing equity to themselves. . . .

4

*United Sciences I*, Slip Op. at 3-7.

Shortly after the above-summarized events, Sharpe, proceeding individually and on behalf of United Sciences, instituted several lawsuits related to his ouster. Specifically, on February 10, 2014, Sharpe filed suit in the Superior Court of Fulton County against Kellett, Jr. and other United Sciences board members, seeking injunctive relief and asking the court to appoint a receiver and award damages. During the pendency of the February 2014 action, Smith began acting as counsel for United Sciences. Sharpe voluntarily dismissed that case on April 25, 2014.

Thereafter, in July 2014, Sharpe filed a five-count complaint against Kellett Jr. in Fulton County State Court, asserting claims for tortious interference with contractual and business relations, fraud, breach of fiduciary duty, punitive damages, and attorney fees and litigation expenses. On December 8, 2015, the parties informed the state court that they had reached a settlement, and they filed a joint motion for administrative closure, which the court granted on December 11, 2015. In August 2018, the state court granted Sharpe's motion to reopen the case, finding that he had demonstrated that he had not been fully compensated as required under the terms of the parties' settlement. Then, in 2018 and 2019, Sharpe filed four separate actions in Fulton County State Court against various individuals and entities associated with

United Sciences, including one suit against Joseph and HKW, and another suit against Smith and KS. He voluntarily dismissed those state court actions on January 14, 2020.

On January 31, 2020, Sharpe and other parties[2] filed a complaint, as amended, in the Superior Court of Fulton County, raising multiple claims against Kellett, Jr. and several other defendants. As relevant here, in Counts 9 to 12, Sharpe alone brought claims against Joseph, HKW, Smith, and KS for aiding and abetting a breach of the Operating Agreement (Count 9), conspiracy to breach the Operating Agreement (Count 10), aiding and abetting a breach of fiduciary duty (Count 11), and conspiracy to breach fiduciary duty (Count 12).[3] Those counts were premised on the defendants' actions that allegedly resulted in a breach of the Operating Agreement and the fiduciary duty owed to the minority shareholders and Sharpe as Manager. Joseph and HKW and Smith and KS filed motions to dismiss the amended complaint, arguing,

_____

[2] The other plaintiffs in the 2020 superior court action (who were also parties to *United Sciences I*) are United Sciences, Ruizhi Hong, Rod McAfee, James Raubolt, Igor Milchman, and similarly situated minority shareholders. The first eight counts of the complaint were brought by these other parties, while the remaining four counts were brought by Sharpe only.

[3] Initially, Sharpe also named a second KS attorney, William Roche, as a defendant. Sharpe voluntarily dismissed all claims against Roche without prejudice in July 2020.

6

in relevant part, that Sharpe's claims against them were barred by the two-dismissal rule. They also argued that Sharpe's claims were precluded as a matter of law under the so-called "stranger doctrine" because neither Joseph nor Smith was a stranger to the Operating Agreement.

After a hearing, the trial court found that, pursuant to OCGA § 9-11-41, Sharpe's numerous voluntary dismissals of suits related to his removal as Manager warranted dismissal of his present claims against the lawyer/law firm defendants. Alternatively, the trial court determined that Counts 9 to 12 of the amended complaint sounded in tortious interference, and were therefore due to be dismissed under the "stranger doctrine," which provides that "only a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract may be liable for tortious interference with the contract or the relationship." *Perry Golf Course Dev., LLC v. Housing Auth. of City of Atlanta*, 294 Ga. App. 387, 390 (3) (670 SE2d 171) (2008) (citation and punctuation omitted).

This Court affirmed the trial court's dismissal of Sharpe's claims. *United Sciences I*, Slip Op. at 20-26. As noted above, our Supreme Court remanded the case to us for reconsideration of Division 5 in light of *Joyner*, in which the Supreme Court clarified that the two-dismissal rule satisfies only one of the prerequisites that must

7

be established before res judicata will operate to bar a subsequent action. 314 Ga. at 6-7 (2) (a) ("after a trial court determines that the two-dismissal rule applies and that the second voluntary dismissal results in an adjudication on the merits, the trial court must then evaluate whether that adjudication bars the third action . . . by applying the law of res judicata").

However, as this Court noted in *United Sciences I*, because we affirmed the trial court's dismissal of Sharpe's claims based on the application of OCGA § 9-11-41 (a) (3), we did not address the trial court's alternative ruling that Sharpe's claims against Joseph, HKW, Smith, and KS were due to be dismissed because those parties were not strangers to the Operating Agreement. Slip Op. at 26 n. 5. Because this issue is dispositive of the appeal, we address it now.[4] We therefore vacate Division 5 of our

[4] In the order now on appeal, the trial court did not engage in a res judicata analysis. And although the record on appeal exceeds 11,000 pages, this record does not appear to include complete copies of the prior state court actions. Instead, the record contains the first page of several state court complaints and Sharpe's voluntary dismissals of those actions without prejudice. Despite Sharpe's representation in the 2020 superior court complaint that the matters raised in the prior state court actions were "for the same cause of action" as those asserted in the 2020 complaint, we find, under the unique circumstances of this case, that full copies of those complaints are necessary for meaningful appellate review of the res judicata effect, if any, of the prior actions. See *Joyner*, 314 Ga. at 9 (2) (c), n. 16 (reversing Division 2 (which addressed two-dismissal rule) of Court of Appeals' opinion, vacating remainder of opinion, and remanding to this Court "with instruction that the case be *remanded to the trial court* to reconsider, in light of this opinion, [defendants'] motion to dismiss"

October 7, 2021 opinion (which pertained to Case No. A21A1061) and substitute the following.

In *United Sciences I*, and in supplemental briefing to this Court, Sharpe argues that the trial court erred in dismissing his claims against the lawyer/law firm defendants because the stranger doctrine does not apply to aiding/abetting and conspiracy claims, and Joseph and Smith were not acting in the best interests of United Sciences, and therefore acted as strangers. We disagree.

We first note that the trial court correctly analyzed Sharpe's claims against the lawyers/law firm defendants (i.e., aiding and abetting a breach of the Operating Agreement, conspiracy to breach the Operating Agreement, aiding and abetting a breach of fiduciary duty, and conspiracy to breach fiduciary duty) in the same manner as tortious interference claims. See *Insight Technology, Inc. v. FreightCheck, LLC*, 280 Ga. App. 19, 25 (1) (a) (633 SE2d 373) (2006) (plaintiff must establish elements of tortious interference "regardless of whether [the claim is] denominated [as] 'aiding

---

because trial court "did not engage in a res judicata analysis") (emphasis supplied).

"Although we could remand the case to the trial court for [supplementation] of the record, we will nevertheless proceed, in the interest of judicial economy and efficiency, because we can resolve the issue [of the correctness of the trial court's dismissal order] on the record available to us." *Agnes Scott College, Inc. v. Hartley*, 346 Ga. App. 841, 843 (2) (816 SE2d 689) (2018) (citation omitted).

9

and abetting a breach of fiduciary duty,' 'procuring a breach of fiduciary duty,' or 'tortious interference with a fiduciary relationship'"); *White v. Shamrock Bldg. Systems, Inc.*, 294 Ga. App. 340, 345 (3) (669 SE2d 168) (2008) (claim for tortious interference with business relations "requires proof of virtually the same elements as the tort of aiding and abetting a breach of fiduciary duty"). See also *Rome Indus. v. Jonsson*, 202 Ga. App. 682, 684 (2) (415 SE2d 651) (1992) ("The averment of a conspiracy in the declaration does not ordinarily change the nature of the action nor add to its legal force or effect. The gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff and the damage thereby done wrongfully.") (citation and punctuation omitted).

Turning now to the applicability of the stranger doctrine, we are mindful that to state a claim for tortious interference with contractual relations, business relations, or potential business relations, a plaintiff must allege

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

10

*Blakey v. Victory Equip. Sales, Inc.*, 259 Ga. App. 34, 38 (2) (d) (576 SE2d 288) (2002). To establish under the first element that the defendant acted "without privilege," the plaintiff must show that "the defendant was an intermeddler or 'stranger' to the [contract or] business relationship at issue." *ASC Equip. USA, Inc. v. City Commercial Real Estate, Inc.*, 303 Ga. App. 309, 313 (1) (693 SE2d 559) (2010). "[I]f the defendant has a legitimate economic interest in either the contract or a party to the contract, . . . [or w]here a defendant has a financial interest in one of the parties to the contract or in the contract, the defendant is not a stranger to the contract or business relationship, even though [he] is not a signatory to the contract." *Tidikis v. Network for Med. Communications & Research, LLC*, 274 Ga. App. 807, 812-813 (4) (619 SE2d 481) (2005) (citations omitted). See also *American Mgmt. Svcs. East, LLC v. Fort Benning Family Communities, LLC*, 333 Ga. App. 664, 687-688 (4) (b) (774 SE2d 233) (2015) (physical precedent only) (applying stranger doctrine to claim for aiding and abetting breach of fiduciary duty).

In this case, Sharpe alleged that Joseph and Smith conspired with Kellet, Jr. and others to breach the Operating Agreement and acted with the intent to benefit themselves at the expense of United Sciences. However, even accepting the factual

allegations in Sharpe's complaint as true,[5] it is evident that the lawyers/law firm defendants were not strangers to the Operating Agreement or to the underlying business relationship between Sharpe, Kellett, Jr., and United Sciences.

According to the complaint, Joseph, in his role as counsel for United Sciences, drafted the Operating Agreement in 2012. Additionally, the complaint alleges that Joseph owns 1.34 percent of United Sciences. Accordingly, Joseph had a financial interest in one of the parties to the Operating Agreement, and as a result, he is not a stranger to the contract nor to the business relationship giving rise to the contract. See *Tidikis*, 274 Ga. App. at 813 (4) (a) (majority shareholder could not be liable to terminated CEO for tortious interference with employment contract or tortious interference with prospective employment because shareholder had financial interest in party to the contract and was not a stranger to the contract); see also *Atlanta Market Center Mgmt, Co. v. McLane*, 269 Ga. 604, 610 (2) (503 SE2d 278) (1998) ("in order to be liable for tortious interference, one must be a stranger to both the contract at issue *and* the business relationship giving rise to and underpinning the

[5] "While a trial court's ruling on a motion to dismiss for failure to state a claim is subject to de novo review, we accept the allegations of fact that appear in the complaint and view those allegations in the light most favorable to the plaintiff." *Osprey Cove Real Estate, LLC v. Towerview Constr., LLC*, 343 Ga. App. 436, 437 (1) (808 SE2d 425) (2017) (citations and punctuation omitted).

12

contract") (emphasis supplied). Therefore, the trial court did not err by dismissing Sharpe's claims against Joseph. See *Perry Golf Course Dev., LLC*, 294 Ga. App. at 390-391 (3) (affirming trial court's dismissal of tortious interference claim where "complaint reveal[ed] with certainty that defendant was not a stranger to the contract" nor "a stranger to the fiduciary relationship [defendant was] accused of violating") (citation and punctuation omitted).

As to Smith, the complaint alleged that in March 2014, Smith, while "purporting to be an attorney for United Sciences," sent a letter to Sharpe's counsel demanding that Sharpe return a laptop computer Smith represented was owned by United Sciences. According to the complaint, Smith "was aware that Sharpe's alleged removal as Manager was wrongful[;]" "knew that only Sharpe, as Manager, would have the authority to hire him as an attorney for United Sciences[;]" and "Smith and K & S regarded [United Sciences] as a mere tool of the Kellett family, which was a source of business for the firm." This Court has expressly held that "an attorney who on behalf of a client asserts or prosecutes a claim arising from contractual rights and duties is *not* a stranger to such contract . . . so that a claim of tortious interference will *not* lie against him or his partners." *Hyre v. Denise*, 214 Ga. App. 552, 555 (7) (449 SE2d 120) (1994) (emphasis in original). Sharpe's allegations against Smith relate

13

only to conduct Smith undertook in the course of representing United Sciences (one of the parties to the Operating Agreement) after Sharpe's removal. Accordingly, the trial court properly dismissed Sharpe's claims against Smith. See *Atlanta Market Center Mgmt. Co.*, 269 Ga. at 608 (2) ("the alleged interferer is not a stranger to the contract and thus not liable for tortious interference where the alleged interferer was the agent for one of the parties to the contract").

Finally, because Sharpe's claims against Joseph and Smith are barred, his derivative claims against HKW and KS necessarily fail. See *Oswell v. Nixon*, 275 Ga. App. 205, 208 (1) (620 SE2d 419) (2005) ("since [plaintiff's] . . . respondeat superior claim [is] derivative of his other claims, his derivative claims likewise fail").

Based on the foregoing, we affirm the portion of the trial court's order dismissing Sharpe's claims against Joseph, HKW, Smith, and KS.

*Judgment affirmed in Case No. A21A1061. Judgment affirmed in part and vacated in part and case remanded with direction in Case No. A21A1060. Barnes, P. J., and Markle, J., concur.*