A04A0593. MONROE v. BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF GEORGIA et al.
A04A0594. COST CARE, INC. v. MONROE.
(602 SE2d 219)

ADAMS, Judge.

Dr. Dougald Monroe, individually and as administrator of the estate of Dorothy Monroe, brought suit against the Board of Regents of the University System of Georgia and its administrative agents,

Blue Cross & Blue Shield of Georgia, Inc. and Cost Care, Inc.[1] Monroe's suit alleged wrongful denial of health care benefits and asserted claims for breach of contract, breach of fiduciary duty and negligent misrepresentation. All three defendants filed motions for summary judgment on all claims. The trial court denied summary judgment on the breach of contract claims against the Board of Regents and Cost Care. But the trial court granted summary judgment on Monroe's breach of fiduciary duty claims against all defendants and all contract claims against Blue Cross.[2] Monroe appeals the grant of summary judgment to Blue Cross and partial summary judgment to Cost Care. Cost Care cross-appeals the trial court's denial of its motion for summary judgment on Monroe's breach of contract claim.[3]

The Board of Regents sponsored an employee benefit health plan for employees and retirees of the University System of Georgia. The Plan is self-funded by contributions from Plan participants and by the Board, which is designated as the "Plan Sponsor." The Health Plan Document provides that Blue Cross, as "Claims Administrator" of the Plan makes initial claims determinations and reviews claims on appeal. The Board of Regents is designated as a "Sponsor," "Administrator," and "Named Fiduciary" under the Plan. In its capacity as "Named Fiduciary," the Board retains the authority to make final benefits determinations. Cost Care has a side contract with the Board to provide medical utilization review services and other services to Plan participants. Under this contract, Cost Care is designated as an independent contractor.

Monroe participated in the Plan as a retiree of the University System, and his wife, Dorothy, was also a beneficiary of the Plan as a dependent spouse. In 1997, Dorothy Monroe was admitted to a nursing home after she was diagnosed with Parkinson's disease and other conditions. The Plan covers "expenses for confinement in an extended care facility" under certain conditions. Generally, the Plan covers expenses that are deemed "medically necessary," but will deny coverage for care that is custodial in nature. When Monroe filed a claim for coverage of his wife's nursing home expenses, Blue Cross forwarded the claim to Cost Care for a medical utilization review. Cost Care determined that the nursing services rendered to Dorothy Monroe at the nursing home were not skilled, but rather were custodial in nature. Thus, Cost Care concluded that it was not

---

[1] Cost Care is designated in the cross-appeal as "Cost Care, Inc. d/b/a Unicare/Cost Care."

[2] The trial court also granted summary judgment to all the defendants on the negligent misrepresentation claims, but Monroe does not appeal that decision.

[3] Monroe asserts in his brief that he has reached a partial settlement with the Board of Regents, and it is not a party to this appeal.

medically necessary for Dorothy Monroe to reside in a nursing home. Cost Care sent a letter notifying Monroe of its determination. And because the Plan does not cover services that are not medically necessary, Blue Cross sent Monroe a letter explaining the denial of the claims for nursing home benefits based upon Cost Care's review.

Monroe appealed this denial of benefits. Neither Blue Cross nor the Board conducted an independent medical review of the claim. But during the review process, Cost Care had Dorothy Monroe's treatment file reviewed by a number of physicians, including neurologists and geriatric specialists. Cost Care did not alter its conclusions following those reviews.

With the exception of several brief hospital stays, Dorothy Monroe remained in the nursing home until she died in November 2001. And ultimately, Monroe had her removed from the Plan so that some of her expenses could be covered by Medicaid. Monroe's complaint seeks full payment of the nursing home costs in excess of $160,000.

### Case No. A04A0593

1. Monroe contends that the trial court erred in granting summary judgment to Blue Cross and Cost Care on his breach of fiduciary duty claims. He asserts that the evidence, when construed in his favor, raises a question of fact as to whether Blue Cross and Cost Care each assumed the administrative duties of a Named Fiduciary under the Plan, or otherwise acted as a fiduciary, and whether they breached those duties.

As a threshold matter, we note that the Plan in this case is not governed by the Employee Retirement Income Security Act, 29 USC § 1001 et seq., because such plans established by governmental entities are expressly exempt from ERISA. 29 USC § 1003 (b). And the Georgia Attorney General has determined that the Plan is not subject to the Georgia Insurance Code. 1981 Op. Atty. Gen. 81-38. Accordingly, the issue of whether any breach of fiduciary duty claim exists in this case is governed by Georgia common law.

The general rule in Georgia is that a breach of contract cannot constitute a tort unless a special or confidential relationship exists between the parties. *Miles v. Great Southern Life Ins. Co.*, 197 Ga. App. 540, 541 (1) (398 SE2d 772) (1990). Under OCGA § 23-2-58, a relationship is deemed confidential,

> whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as

the relationship between partners, principal and agent, etc.

And it is well settled that "[t]he party asserting the existence of a confidential relationship has the burden of establishing its existence." (Footnote omitted.) *Canales v. Wilson Southland Ins. Agency*, 261 Ga. App. 529, 531 (1) (583 SE2d 203) (2003).

Generally, no fiduciary relationship exists between an insured and his or her insurer. *Nash v. Ohio Nat. Life Ins. Co.*, 266 Ga. App. 416, 422 (1) (597 SE2d 512) (2004); *Miles v. Great Southern Life Ins. Co.*, 197 Ga. App. at 541 (1). But fiduciary relationships may arise in an insurance context where an employer seeks to procure insurance coverage for its employees. Georgia courts have held, for example, that when an employer takes action to procure group coverage for its employees, such as selecting a group insurer, negotiating for new coverage or changing existing coverage, the employer acts as an agent for its employees. But once the policy is issued, the employer acts as an agent for the insurer, rather than the employees, when it performs duties necessary to make the group policy effective or applicable to a particular employee. *Miles v. Great Southern Life Ins. Co.*, 197 Ga. App. at 541-542 (1). We could find no Georgia cases, however, addressing the situation before us where an employer opts for a self-funded plan under which it acts as the "Named Fiduciary." But we need not reach the issue of whether the Board had fiduciary obligations, because the language of the applicable contracts establishes that neither Blue Cross nor Cost Care acted as fiduciaries in connection with the Plan.

Article 1 of the Health Plan Document provides that Blue Cross, as the Claims Administrator, is the "entity with responsibility to assist the Plan Administrator [here, the Board] in certain administrative functions in a *ministerial, non-fiduciary* capacity." (Emphasis supplied.) The Health Plan Document further provides that the Plan Sponsor and the Plan Administrator are the Named Fiduciaries under the Plan and that all responsibilities not specifically delegated to another Named Fiduciary remain with the Plan Sponsor. The Board of Regents served as both the Plan Sponsor and the Plan Administrator. In addition, Article 7, Section 7.4 of the Health Plan Document provides that the creation and continuance of the Plan or any Plan policies is not intended to give "any person a non-statutory legal or equitable right" against the Board, as the Employer and Plan Administrator or against Blue Cross, the Claims Administrator.

Assuming, without deciding, that the Board owed Monroe fiduciary duties in making claims determinations, we find that Monroe has failed to establish that the Board delegated any such duties to Blue Cross. The Health Plan Document indicates that the Board intended to delegate only ministerial, nonfiduciary duties to Blue

Cross and as Monroe concedes, the Board retained the final authority over benefits determinations. Thus, the Board specifically retained any fiduciary responsibilities it may have had toward the Plan participants and did not delegate such obligations. Monroe has failed to provide evidence sufficient to create a jury issue as to whether any further delegation of duties to Blue Cross occurred or whether Blue Cross assumed any responsibilities other than those contemplated by the Plan documents that would give rise to a fiduciary obligation. Thus, we find that Monroe has failed to raise a jury issue as to the existence of a confidential/fiduciary relationship between the Plan participants and Blue Cross.

The relationship between the Board and Cost Care is governed by a separate contract to procure utilization review services. That agreement provides that Cost Care acted as an independent contractor in providing these services. Thus, no agency relationship was contemplated by the parties. Moreover, the contract does not give Cost Care any authority to grant or deny benefits, but instead provides that the Board has "exclusive jurisdiction over the Plan benefits."

Neither the Cost Care agreement nor the Health Plan Document reflects any delegation of agency or other fiduciary responsibilities by the Board to Cost Care. And Monroe has not presented evidence to create a fact issue as to any such delegation or any assumption by Cost Care of such duties. We note, for example, that the Cost Care agreement provides that any addition, deletion or modification of services required by Cost Care under the agreement is subject to further negotiation and must be in writing. Monroe has presented no evidence of any negotiation or writing.

The fact that the Board and Blue Cross relied upon Cost Care in denying Monroe's claim for benefits does not raise a jury issue as to whether a fiduciary or confidential relationship existed. Nor does Monroe's assertion that he relied upon the Board, Blue Cross and Cost Care to properly administer the Plan create such an issue. "[T]he mere fact that one reposes trust and confidence in another does not create a confidential relationship. A confidential and fiduciary relationship must be shown by proof, and the burden is upon the party asserting the existence of such [a] relationship to affirmatively show the same." (Citations and punctuation omitted.) *Automated Solutions Enterprises v. Clearview Software*, 255 Ga. App. 884, 887-888 (2) (567 SE2d 335) (2002). See also *Brown v. Blue Cross Blue Shield of Ga.*, 260 Ga. App. 796, 797-798 (581 SE2d 636) (2003); *Allen v. Hub Cap Heaven*, 225 Ga. App. 533, 537 (4) (484 SE2d 259) (1997) (no confidential relationship where party acted as independent contractor).

In support of his assertion that the Board had delegated fiduciary responsibility to Blue Cross and Cost Care, Monroe points to testimony by Thomas Donald Davis, the Assistant Vice Chancellor of the Board, who was in charge of the health plan. Davis testified that the Board delegated responsibility for "daily operations" to Blue Cross and Cost Care. But Davis immediately qualified that statement by noting that any delegation was "[a]s called for in the contract. The contract governs that." Davis also acknowledged that the Board retained the final authority to make benefit determinations under the plan. Thus, Davis's testimony simply underscores the contractual provisions discussed above.

We find that the trial court properly granted Blue Cross and Cost Care summary judgment on Monroe's breach of fiduciary claims.[4]

2. Monroe next asserts that the trial court erred in granting summary judgment on his breach of fiduciary duty claims because an issue of fact exists as to whether Blue Cross and Cost Care each aided and abetted the Board's breach of fiduciary duties. To support this claim, Monroe relies upon this Court's decision in *Time Warner Entertainment Co. v. Six Flags Over Ga.*, 245 Ga. App. 334, 342-343 (1) (b) (537 SE2d 397) (2000), vacated on other grounds, *Time Warner Entertainment v. Six Flags Over Ga.*, 534 U. S. 801 (122 SC 24, 151 LE2d 1) (2001).

The *Time Warner* opinion noted, however, that this Court had never explicitly recognized a cause of action for aiding and abetting a breach of fiduciary duty. Although the opinion discussed, in dicta, the potential viability of a claim for aiding and abetting liability, it stopped short of establishing such a cause of action because the issue was not properly before the Court. The appellants there had conceded the existence of aiding and abetting liability in the trial court and had failed to enumerate as error on appeal the jury's finding of liability on that theory. The *Time Warner* decision properly acknowledged that, under these circumstances, this Court lacked jurisdiction to consider the issue. Id. at 343 (1) (b). Thus, even after *Time Warner*, Georgia has never recognized a claim for aiding and abetting a breach of fiduciary duty.

Further, we note that Monroe failed to assert such a claim in either his original complaint or by later amendment. Although the allegations of the complaint assert that Blue Cross and Cost Care acted as the Board's agents, we find that this was insufficient to put Blue Cross and Cost Care on notice that Monroe was asserting a novel

---

[4] We find that *Florence Nightingale Nursing Svc. v. Blue Cross/Blue Shield of Alabama*, 41 F3d 1476 (11th Cir. 1995), upon which Monroe relies, is distinguishable from the case before us as it involved a self-funded plan governed by ERISA, which Monroe concedes is not applicable in this case.

cause of action for such aiding and abetting liability. The only reliable support Monroe provided to show that he raised the issue before the trial court is a record citation to a footnote in his response brief to Cost Care's motion for summary judgment, although we found, upon further review of the record, that Monroe made additional argument on this point in response to Blue Cross's motion for summary judgment.

But pretermitting the question of whether this argument was sufficient to assert a separate cause of action for aiding and abetting a breach of fiduciary duty, we decline to recognize such a new cause of action on the record before us.

3. In light of our holding in Divisions 1 and 2 above, we find no merit to Monroe's argument that the trial court erred in dismissing his claim for extra-contractual and punitive damages. Because Monroe's only remaining claims are breach of contract claims, he is limited to recovering damages "such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach." OCGA § 13-6-2. "It is well settled that punitive damages are not available in breach of contract claims." (Citation and punctuation omitted.) *Cline v. Lee*, 260 Ga. App. 164, 169-170 (2) (581 SE2d 558) (2003).

4. Monroe next asserts that the trial court erred in granting Blue Cross summary judgment on his breach of contract claim because Blue Cross was a signatory to the Health Plan Document. Monroe asserted claims against Blue Cross for both a breach of the Health Plan Document and a breach of Blue Cross's side contract with the Board. The trial court found that no breach of contract claim existed against Blue Cross under either agreement.

Addressing the side contract first, we find that the trial court correctly granted summary judgment to Blue Cross on Monroe's claim that it was a third-party beneficiary of that agreement.

[I]n order for a third party to have standing to enforce a contract[,] it must appear clearly from the contract that it was intended for the benefit of the third party. The mere fact that the third party would benefit from performance of the agreement is not alone sufficient. Unless such an intention is shown on the face of the contract, defendant is under no duty to the third party and consequently plaintiff acquires no right as the third-party beneficiary.

(Citations and punctuation omitted.) *Satilla Community Svc. Bd. v. Satilla Health Svcs.*, 275 Ga. 805, 810 (2) (573 SE2d 31) (2002).

The side contract between Blue Cross and the Board states that "[e]xcept as expressly provided by this Agreement, nothing in this Agreement will confer any rights upon any person or entity which is not a party to this Agreement." Monroe has failed to point to any provision of the contract that expressly confers such benefits upon the Plan participants. Thus, the side contract makes it clear that it did not intend to confer any third-party beneficiary rights. This contract language distinguishes this contract from the one in *Gardner & White Consulting Svcs. v. Ray*, 222 Ga. App. 464 (474 SE2d 663) (1996). In that case, this Court found that a plan beneficiary had a cause of action as a third-party beneficiary to bring a breach of contract claim against the plan administrator of a county's self-funded health plan. Id. at 466-467. The *Ray* case makes no mention of contract language expressly disclaiming any third-party beneficiary rights. And even though Monroe and the other Plan participants may have benefitted from the side contract, that alone is not sufficient to confer third-party beneficiary status.

In addition to the side contract, however, Blue Cross signed the Health Plan Document under language reading, "The Claims Administrator hereby agrees to administer *for the employees* of the Plan Sponsor, the benefits described herein . . . unless the Plan is terminated. . . ." (Emphasis supplied.) Therefore, Blue Cross expressly undertook certain obligations "for the employees." Its duties under the Health Plan Document included making an initial determination of any claims and responding in writing within 90 days to any submitted claims. Blue Cross's processing of claims was to be done following the same procedures and policies "and using the same skill and care as are used by [Blue Cross] with respect to claims under benefit plans insured by it." The Health Plan Document also required Blue Cross to review any denied claims. And although these duties were designated and intended to be ministerial and nonfiduciary in nature, that designation alone does not insulate Blue Cross from a breach of contract claim, especially as Monroe is alleging nonperformance by Blue Cross.

We find that Monroe has presented evidence sufficient to raise a jury question on the issue of whether Blue Cross performed its obligations under the Health Plan Document. And although there is evidence that Blue Cross deferred to Cost Care at the Board's direction, we find that Monroe has raised an issue as to whether Blue Cross fulfilled its own obligations to the employees under the Health Plan Document. Cost Care's contract provides that it did not make medical benefit determinations, but only performed utilization reviews. The Board retained exclusive jurisdiction over Plan benefits under that contract, and then delegated responsibility for the initial claim determination to Blue Cross under the Health Plan Document.

This evidence presents an issue as to whether Blue Cross made an independent determination on Monroe's claims and whether it reviewed Monroe's appeal from the denial of his claims as required under the Health Plan Document. Accordingly, we reverse the trial court's grant of summary judgment to Blue Cross on Monroe's claim that Blue Cross breached the Health Plan Document.[5]

## *Case No. A04A0594*

5. (a) On cross-appeal, Cost Care asserts that the trial court erred in failing to grant summary judgment on Monroe's third-party beneficiary claim that Cost Care breached its side contract with the Board. In making this argument, Cost Care concedes for purposes of this appeal that Monroe was a third-party beneficiary under the company's side contract and that Monroe has standing to enforce the terms of the contract. Cost Care asserts instead that Monroe is not seeking to enforce the terms of the side contract, but rather is seeking to enforce the terms of the Plan, under which Cost Care has no obligations.

We find, however, that Monroe has properly asserted a third-party beneficiary claim under the side contract between Cost Care and the Board. Monroe's Second Amended Complaint seeks damages resulting from what he alleges is Cost Care's breach of that contract and its breach of the implied duty of good faith. See *Gardner & White Consulting Svcs. v. Ray,* 222 Ga. App. at 466-467. The trial court found that an issue of fact exists as to whether Dorothy Monroe's nursing home care was medically necessary. Cost Care does not dispute that finding on appeal. This raises an issue as to whether Cost Care breached the side contract by concluding that the care was custodial in nature.

(b) But Cost Care asserts that even if Monroe is properly seeking to enforce the terms of the side contract, the language of the contract expressly precludes Monroe from suing Cost Care for health benefits or other damages. Cost Care contends that the side contract does not empower the Board to sue for breach or to recover health benefits to remedy the breach and thus, Monroe cannot seek such a recovery. Cost Care relies upon language in the agreement providing that Cost Care "shall have no responsibility of any kind to the [Board], eligible members, or any other person, firm, corporation or entity for . . . [p]ayment of any medical claims of any eligible member." In addition,

---

[5] Although the trial court granted summary judgment on the ground that Blue Cross was not the Board's agent under the terms of the Health Plan Document, we need not reach that issue because we find that Blue Cross directly obligated itself to the Plan beneficiaries by signing the Health Plan Document.

an amended version of the contract provides that neither Cost Care nor the Board can bring a claim against the other for any breach or wrongful conduct in connection with the terms of the contract. Cost Care contends that because the Board cannot bring a claim for breach of contract, Monroe, as a third-party beneficiary cannot bring such a claim.

Addressing the language in the amended agreement, we are faced with two seemingly conflicting principles of law. First is the general principle that "[t]he remedies available to the beneficiary are exactly the same as would be available to him if he were a contractual promisee of the performance in question." (Citation and punctuation omitted.) *Gardner & White Consulting Svcs. v. Ray*, 222 Ga. App. at 466. Second, we must consider the principle that a "covenant not to sue creates a personal right in the form of protection against suit. In essence, a covenant not to sue creates a defense to suit. As such, it is not assignable." *Brantley Co. v. Briscoe*, 246 Ga. 310, 312 (1) (271 SE2d 356) (1980). See also *Miller v. Grand Union Co.*, 270 Ga. 537, 538 (1) (512 SE2d 887) (1999).

But these principles may be reconciled by limiting the language of the amended side contract to its own terms. The language literally states that Cost Care and the Board agree not to bring claims against each other. Cost Care does not dispute that Monroe was an intended beneficiary of the side contract, and nothing in the language of the contract bars a third-party beneficiary from bringing such a claim. Thus, even though Monroe is limited to remedies that would be available to a promisee under the contract, that does not mean that Monroe literally stands in the Board's shoes for purposes of such a personal waiver of rights. In fact, the side contract specifically provides that no provision of the contract is waived and no breach is excused or consented to "unless such waiver or consent shall be in writing and signed by the party claimed to have waived or consented." Thus, we find that the language of the amended contract does not bar Monroe's breach of contract claim against Cost Care. Cf. *Magill v. Hoffman*, 169 Ga. App. 470, 471 (313 SE2d 490) (1984) (insurer's covenant not to sue does not bar claims by insured).

And even though the side contract also provides that Cost Care has no responsibility for payment of medical claims, we find that such language cannot relieve Cost Care from paying damages resulting from a breach of the contract. While Monroe could not have sought direct payment of his medical claims from Cost Care under the language of the side contract, he can assert a claim for such damages as arise naturally from any alleged breach of the contract by Cost Care. See OCGA § 13-6-2. And if properly proven and established, such damages could potentially be in an amount equivalent to the denied medical benefits.

6. Cost Care also argues that the trial court erred in denying its motion for summary judgment as to Monroe's claims for attorney fees and litigation expenses. Cost Care based this argument on its position that it was not liable to Monroe under any cause of action. But given our holding in Division 5 that Cost Care is not entitled to summary judgment on Monroe's claim for breach of the side contract, we find this argument to be without merit.

*Judgment affirmed in part and reversed in part. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED JULY 9, 2004 —
RECONSIDERATIONS DENIED JULY 22, 2004 — 

*Mary A. Prebula*, for Monroe.
*Carter & Ansley, Michael A. Coval*, for Cost Care, Inc.
*Thurbert E. Baker*, Attorney General, *Laura W. Hyman, William W. Banks, Jr., Katherine S. Davis*, Assistant Attorneys General, *Michael R. Hurst*, for Board of Regents of the University System of Georgia et al.