· *Smith, White, Sharma & Halpern, Larry J. White, Kevin J. Jones*, for appellant.

*Goldner, Sommers, Scrudder & Bass, Glenn S. Bass, Michelle R. Kraynak*, for appellees.

A06A0710. INSIGHT TECHNOLOGY, INC. v. FREIGHTCHECK, LLC et al.

(633 SE2d 373)

ELLINGTON, Judge.

Insight Technology, Inc. brought this action in the Superior Court of Gwinnett County against Darren Brewer, Patrick Hull, GetLoaded.com, LLC, and FreightCheck, LLC. Insight asserted claims against these parties for breach of fiduciary duty, misappropriation of trade secrets, misappropriation of corporate opportunities, and fraud. Insight alleged that Brewer, who was Insight's president, and Hull secretly agreed to create FreightCheck to compete with Insight using Insight's own computer software and business practices. The trial court granted the motions for summary judgment filed by Hull, GetLoaded, and FreightCheck on all claims. The trial court granted Brewer's motion for summary judgment in part, reserving to the jury Insight's claims for breach of fiduciary duty, appropriation of corporate opportunities, punitive damages, and attorney fees. Insight

---

[19] (Punctuation omitted.) *Fluke v. Westerman*, 271 Ga. App. 418, 420 (1) (609 SE2d 744) (2005).

[20] See *Killebrew*, supra; *McDaniel v. Lawless*, 257 Ga. App. 187, 189 (570 SE2d 631) (2002).

[21] *Harris v. State*, 256 Ga. App. 120, 122 (2) (567 SE2d 394) (2002).

[22] See *McDaniel*, supra at 190 (where record contains no competent evidence that criminal act was foreseeable, we will affirm a trial court's grant of summary judgment for property owner).

appeals, contending jury issues remain on all of its claims, with the exception of its claim against Hull and GetLoaded for appropriation of corporate opportunities. For the reasons explained below, we conclude questions of material fact remain on Insight's claims against Hull, GetLoaded, and FreightCheck for procuring a breach of fiduciary duties, misappropriation of trade secrets, punitive damages, and attorney fees, and reverse the trial court's judgment in part. We affirm the remainder of the trial court's judgment.

"On appeal from the grant of summary judgment [the appellate court] conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation and punctuation omitted.) *Munroe v. Universal Health Svcs.*, 277 Ga. 861, 864-865 (2) (596 SE2d 604) (2004).

Viewed in the light most favorable to Insight, the record contains evidence of the following facts. In 1996, Gary Aliengena incorporated Insight in Delaware as an internet-based freight load matching service, or "load board." Under the name NetTrans, Insight's virtual load board allowed independent truckers or small trucking companies to search online for available hauling jobs that matched their equipment and availability. The load board derived its revenue from membership fees paid both by the trucking companies and by shipping brokers and others who posted specific hauling jobs on the website. Insight also derived revenue from paid advertising on its website. GetLoaded, which Hull formed in Virginia in 1999, operated a similar virtual load board and competed with Insight.

When Aliengena created Insight, he hired Brewer to be the director of marketing. Aliengena and Brewer executed an employment agreement which required Brewer to hold in confidence Insight's trade secrets and confidential information. Despite the designated title in the employment agreement, however, Brewer was the president of Insight during his entire employment with the company. Brewer managed Insight's operations from an office in Norcross.

In 1998, Aliengena decided to expand Insight's business into freight factoring. First under the name Quick Pay, and later under the name FactorLoads, Insight paid truckers immediately on hauling invoices and then, as an assignee, collected payment from the payors, either shippers or freight brokers. Because these assignments were "without recourse," Insight accepted the risk of nonpayment or slow payment. For this service, Insight charged truckers a percentage commission on the face amount of the invoices.

For Insight's FactorLoads service, Brewer created a website, drafted forms, designed procedures, such as for evaluating the credit worthiness of particular shippers and brokers, and trained and

supervised employees. In 2000, Brewer caused Insight to buy a commercially available website design program called ColdFusion and then enhanced the program with features useful in the factoring business. Only Insight employees had access to the administrative section of the FactorLoads.com website through the use of passwords.

In late 1999 or 2000, Brewer met Hull, GetLoaded's majority shareholder and "managing member." By this time, Brewer was a 20 percent shareholder in Insight. Brewer tried, unsuccessfully, to persuade Hull to accept an ad for Insight's FactorLoads service on the GetLoaded website. By late 2001, Brewer and Hull began to discuss starting a new internet factoring business together. Hull wanted to partner with Brewer because of Brewer's experience programming in the freight factoring industry. Hull incorporated a new company, FreightCheck, LLC, in Virginia. Hull also created a new company, Maverick Holdings, LLC, as the sole shareholder. Brewer created a new limited liability company, Extranet Commerce, LLC, as the sole shareholder. Hull's wholly owned company, Maverick, and Brewer's wholly owned company, Extranet, then each became 50 percent shareholders in FreightCheck. Hull provided FreightCheck's startup capital by borrowing $100,000 from GetLoaded and then lending that sum to FreightCheck. Declaring that GetLoaded was "financially interested" in FreightCheck, GetLoaded provided a guaranty of FreightCheck's obligations to an industry lender. Hull also provided a personal guaranty on some of FreightCheck's debts.

FreightCheck launched its website and began operating its factoring business, in competition with Insight, on June 1, 2002. By this time, factoring represented about 98 percent of Insight's total revenue of $5.3 million. Brewer rented office space for FreightCheck in an office suite down the hall from Insight's office so it would be convenient for him to visit FreightCheck's office while still employed at Insight. In the month before FreightCheck became operational, Brewer paid Insight employee Patti Burroughs to train Jeannie Yu in using the FactorPlus software and to train Insight employee Kristina Gersema to use certain accounting software and procedures used in Insight's factoring business. In April 2002, Brewer offered Gersema a job as president of FreightCheck to commence on June 1, subject to Hull's approval. According to Gersema, Brewer told her that he and Hull wanted her to be president of FreightCheck so that Aliengena would not find out about Brewer's connection to the company. FreightCheck also hired Yu. Gersema and Yu signed confidentiality agreements acknowledging that FreightCheck's computer programs, methods, processes and formulas were trade secrets.

The day it launched its business, FreightCheck's website used the customized software program Brewer developed while working

for Insight, and the website was nearly identical to Insight's Factor-Loads website. On its first day, FreightCheck's website even contained testimonials from "satisfied customers" which were identical to testimonials already appearing on FactorLoads.com. Freight-Check also used the same rate structure, forms, and business methods and processes Brewer developed at Insight. The parties presented conflicting evidence regarding whether Aliengena gave Brewer permission to start a new freight factoring company and to use Insight's forms, processes, methods, software and technology to compete with Insight.

Over the next 21 months, while Brewer continued working as Insight's president and supervising its employees, he spent much of his time in the FreightCheck office, managing its operations and supervising its employees. Brewer informed Hull of almost every aspect of FreightCheck's daily operations and sought Hull's approval of decisions. In November 2003, Brewer filed for copyright protection of the customized application of ColdFusion under the name Factor-Plus. Immediately thereafter, Brewer on behalf of Extranet licensed the FactorPlus software both to Insight and to FreightCheck.

Aliengena, Insight's majority shareholder, was unaware of Brewer's relationship with Hull, his 50 percent ownership interest (through Extranet) in FreightCheck, or his role in FreightCheck's operations. On several occasions, Brewer told Gersema, Burroughs and other Insight employees not to tell Aliengena about his involvement in FreightCheck. Aliengena also did not know that Brewer had obtained copyright protection for the FactorPlus software or that he had licensed it to both Insight and FreightCheck in November 2003.

In early 2004, Aliengena and Brewer discussed Insight's revenues, which were "flat." Brewer urged Aliengena to sell Insight to GetLoaded. On February 6, 2004, Brewer, on behalf of Insight, and Hull, on behalf of GetLoaded, executed a bilateral nondisclosure agreement to give GetLoaded access to Insight's confidential and proprietary information. Trade secrets were defined to include, inter alia, source code, programs, and software. Then, on or about February 25, 2004, Burroughs informed Aliengena of Brewer's involvement in FreightCheck. On March 5, 2004, Hull, on behalf of GetLoaded, issued a letter of intent to Insight, offering to buy the company for $900,000, estimated to be 4.5 times earnings. Both Brewer and Hull actively concealed their ownership and participation in Freight-Check, and FreightCheck's relationship to GetLoaded. Having learned of these relationships from Burroughs, however, Aliengena fired Brewer, and Insight filed this lawsuit on March 17, 2004.

After a hearing, the trial court denied Brewer's motion for summary judgment on Insight's claims for breach of fiduciary duty, appropriation of corporate opportunities, punitive damages, and

attorney fees. The trial court granted Brewer's motion for summary judgment on Insight's claims for misappropriation of trade secrets, fraud, and conspiracy to breach fiduciary duty. The trial court granted the remaining appellees' motions for summary judgment on these claims as well as Insight's claims for aiding and abetting breach of fiduciary duty, appropriation of corporate opportunities, punitive damages, and attorney fees.[1] With the exception of the grant of summary judgment in favor of Hull and GetLoaded on Insight's claim for appropriation of corporate opportunities, Insight appeals as to each of these claims and defendants.

1. Insight contends that Georgia law recognizes a claim for aiding and abetting a breach of fiduciary duty. Insight further contends that questions of material fact remain on its claim against Hull, Get-Loaded, and FreightCheck for aiding and abetting a breach of fiduciary duty, and, therefore, the trial court erred in granting the motion for summary judgment filed by Hull, GetLoaded, and FreightCheck on Count 1 of the complaint.

(a) The trial court concluded that Georgia has never recognized a claim for aiding and abetting a breach of fiduciary duty, citing *Monroe v. Bd. of Regents &c. of Ga.*, 268 Ga. App. 659, 664-665 (2) (602 SE2d 219) (2004). In opposing Insight's appeal, Hull, GetLoaded, and FreightCheck contend in addition that, even if Georgia law recognizes such a claim, they cannot be liable because they did not owe any duty to Insight which could form the basis of a tort. In *Monroe*, we declined to recognize a claim for "aiding and abetting a breach of fiduciary duty" on the record then before us. Id. at 665 (2). Because the plaintiff in *Monroe* "failed to assert such a claim in either his original complaint or by later amendment," however, our holding did not (and could not) reach the issue of whether such a claim is allowable under Georgia law. Id. at 664 (2).

Furthermore, we are mindful that there is "no magic in mere nomenclature" in the designation of causes of action. *Guth v. Walker*, 92 Ga. App. 490, 494 (88 SE2d 821) (1955). We must look beyond the designation "aiding and abetting a breach of fiduciary duty" and determine whether Insight's complaint stated a claim which is allowable under Georgia law. Unlike in *Monroe*, we find that Insight's complaint put the appellees on notice that Insight was asserting a claim that Hull, GetLoaded, and FreightCheck were joint tortfeasors who acted in concert with Brewer in his breach of fiduciary duty. We hold that Insight has stated a viable claim under OCGA § 51-12-30.

---

[1] The trial court also granted summary judgment on Insight's claims for tortious interference with contract, unfair competition, and civil RICO; Insight did not appeal the trial court's ruling on these issues.

That Code section provides: *"In all cases,* a person who maliciously procures an injury to be done to another, whether an actionable wrong or a breach of contract, is a joint wrongdoer and may be subject to an action either alone or jointly with the person who actually committed the injury." (Emphasis supplied.) By its terms, OCGA § 51-12-30 is inclusive and not limited to particular torts or types of contracts. See *Luke v. DuPree,* 158 Ga. 590, 596 (1) (124 SE 13) (1924) (maliciously inducing another to break any type of contract is actionable). Georgia courts have acknowledged a cause of action for procuring an injury or aiding and abetting in a wide array of civil cases, such as an employee's breach of an employment contract's requirement that he give a certain notice before terminating the contract,[2] a former employee's breach of a restrictive covenant in an employment contract,[3] an employer's breach of an employment contract, such as by wrongfully terminating an employee,[4] a client's discharge of his attorney and false repudiation of the attorney's authority to file a suit,[5] a partner's wrongful dissolution of a partnership,[6] a breach of a contract to exchange real property,[7] battery,[8] and trespass to land.[9]

More to the point, we have explicitly acknowledged a cause of action for procuring a breach of fiduciary duty based on OCGA § 51-12-30. In *Rome Indus. v. Jonsson,* 202 Ga. App. 682, 684 (1) (415 SE2d 651) (1992), the plaintiff corporation alleged that the defendants induced the corporation's president to breach his fiduciary duty to the corporation. We noted the black letter law "that corporate officers and directors occupy a fiduciary relationship to the corporation and its shareholders, and are held to the standard of utmost good faith and loyalty." (Citation and punctuation omitted.) Id. at 683 (1). Because "[t]he fiduciary relationship between a corporation and its officer arises out of the contractual or employment relationship between the two parties," we determined that the claim fell within the category of claims for tortious interference with contractual rights and reversed the decision of the trial court granting summary

---

[2] *Witty v. McNeal Agency, Inc.,* 239 Ga. App. 554, 560-561 (4) (521 SE2d 619) (1999).

[3] *Williams v. Rio Grande Fence Co.,* 221 Ga. 633, 635 (2) (146 SE2d 630) (1966); *Nat. Linen Svc. Corp. v. Clower,* 179 Ga. 136, 146 (6) (175 SE 460) (1934); *Carroll Anesthesia Assoc. v. AnestheCare, Inc.,* 234 Ga. App. 646, 648-649 (1) (507 SE2d 829) (1998).

[4] *Nottingham v. Wrigley,* 221 Ga. 386, 389-391 (144 SE2d 749) (1965); *Troy v. Interfinancial, Inc.,* 171 Ga. App. 763, 768-769 (2) (320 SE2d 872) (1984); *Sheppard v. Post,* 142 Ga. App. 646, 648 (4) (236 SE2d 680) (1977).

[5] *Studdard v. Evans,* 108 Ga. App. 819, 822-824 (2) (135 SE2d 60) (1964).

[6] *Arford v. Blalock,* 199 Ga. App. 434, 440-442 (13) (405 SE2d 698) (1991).

[7] *Luke v. DuPree,* 158 Ga. 590, 596 (1) (124 SE 13) (1924).

[8] *Joiner v. Lane,* 235 Ga. App. 121, 122-124 (1), (2) (d) (508 SE2d 203) (1998).

[9] *Melton v. Helms,* 83 Ga. App. 71, 73-75 (1) (62 SE2d 663) (1950).

judgment in favor of the defendants. Id. at 683-684 (1).[10] As the Supreme Court of Georgia has explained, "[p]arties to a contract have a property right therein with which a third party cannot interfere without legal justification or privilege, and a party injured by another's wrongful interference may seek compensation in tort" under OCGA § 51-12-30. (Citation omitted.) *Atlanta Market Center Mgmt. Co. v. McLane*, 269 Ga. 604, 608 (2) (503 SE2d 278) (1998). Such claims do not require proof that the defendant owed a direct contractual duty to the plaintiff. Rather, a claim for tortious interference with contractual relations requires proof that the defendant is a stranger to the contract with which the defendant allegedly interfered and to the business relationship giving rise to the contract. *Pruitt Corp. v. Strahley*, 270 Ga. 430 (510 SE2d 821) (1999); *Atlanta Market Center Mgmt. Co. v. McLane*, 269 Ga. at 608-610 (2).[11]

In summary, regardless of whether denominated "aiding and abetting a breach of fiduciary duty," "procuring a breach of fiduciary duty," or "tortious interference with a fiduciary relationship," Georgia law authorizes a plaintiff to recover upon proof of the following elements: (1) through improper action or wrongful conduct and without privilege, the defendant acted to procure[12] a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge that the primary wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and the intent to injure;[13] (3) the defendant's wrongful conduct procured a breach of

---

[10] See also *Nager v. Lad 'N Dad Slacks*, 148 Ga. App. 401, 403-404 (3) (251 SE2d 330) (1978) (finding a jury question on a claim for tortious interference with contractual relations under the predecessor to OCGA § 51-12-30 where there was evidence that the defendant tried to drive its competitor out of business by secretly soliciting and hiring away a substantial percentage of the plaintiff's key salesmen, using confidential information and by suggesting to the employees that the plaintiff company was incompetently run and insolvent).

[11] See also *Williams v. Svc. Corp. Intl.*, 218 Ga. App. 10 (459 SE2d 621) (1995) (implicitly recognizing a cause of action for aiding and abetting a breach of fiduciary duty); *U3S Corp. of America v. Parker*, 202 Ga. App. 374, 380 (4) (414 SE2d 513) (1991) (accord). But see *Munford v. Valuation Research Corp.*, 98 F3d 604, 613 (11th Cir. 1996) (a cause of action for aiding and abetting a breach of fiduciary duty "would enlarge the fiduciary obligations beyond the scope of a confidential or special relationship").

[12] The word "procure" as . . . used [in OCGA § 51-12-30], does not require the lending of assistance in the actual perpetration of the wrong done by another; but if one, acting only through advice, counsel, persuasion, or command, succeeds in procuring any person to commit an actionable wrong, the procurer becomes liable for the injury, either singly or jointly, with the actual perpetrator.
(Citations and punctuation omitted.) *Melton v. Helms*, 83 Ga. App. at 73 (1).

[13] As we have held,
[t]he act is malicious when the thing done is with the knowledge of plaintiff's rights, and with the intent to interfere therewith. The term "malicious" or "maliciously" means any unauthorized interference, or any interference without legal justification or excuse. Personal ill will or animosity is not essential. Persuading a person

the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff. See *Atlanta Market Center Mgmt. Co. v. McLane*, 269 Ga. at 608 (2); *Luke v. DuPree*, 158 Ga. at 595-597 (1); *Continental Maritime Svcs. v. Maritime Bureau*, 275 Ga. App. 533, 535-536 (2) (621 SE2d 775) (2005); *Rome Indus. v. Jonsson*, 202 Ga. App. at 683-684 (1); *Arford v. Blalock*, 199 Ga. App. 434, 440 (13) (405 SE2d 698) (1991).

(b) Turning to the issue of whether Insight has identified specific evidence giving rise to a triable issue,[14] we conclude that Insight adduced evidence from which a jury could infer that Hull, acting as an agent of both GetLoaded and FreightCheck, tortiously procured Brewer's breach of his fiduciary duty, damaging Insight. Accordingly, we reverse the trial court's order to the extent that it granted summary judgment in favor of Hull, GetLoaded, and FreightCheck on Count 1 of the complaint. *Rome Indus. v. Jonsson*, 202 Ga. App. at 683-684 (1); *Arford v. Blalock*, 199 Ga. App. at 442 (13).

2. Insight contends that Georgia law recognizes a claim for conspiracy to breach a fiduciary duty and that questions of material fact remain on Count 11 of the amended complaint alleging such a claim against Brewer, Hull, GetLoaded, and FreightCheck. We agree that Georgia law does recognize such a claim. See *Luke v. DuPree*, 158 Ga. at 595-596 (1); *Paul v. Destito*, 250 Ga. App. 631, 637-638 (3), (4) (550 SE2d 739) (2001); *Rome Indus. v. Jonsson*, 202 Ga. App. at 684 (2). Nonetheless, the trial court properly granted summary judgment on Count 11 of the amended complaint because this count as set out is merely a duplication of the breach of fiduciary duty claim set forth in Count 1. See Division 1, supra. *Griffin v. Fowler*, 260 Ga. App. 443, 446 (1) (579 SE2d 848) (2003); *Rome Indus. v. Jonsson*, 202 Ga. App. at 684 (2).

3. Insight contends questions of material fact remain regarding whether the FactorPlus software Brewer developed for Insight constituted a trade secret under Georgia law. As a result, Insight contends, the trial court erred in granting the appellees' motions for summary judgment on Count 2 of the complaint, misappropriation of

---

to break a contract for the indirect purpose of injuring the plaintiff or benefiting the defendant at the expense of the plaintiff is a malicious and actionable act if injury arises from it.

(Citations and punctuation omitted.) *Arford v. Blalock*, 199 Ga. App. at 441 (13).

[14] On summary judgment,

[a] defendant who will not bear the burden of proof at trial need only show an absence of evidence to support an essential element of the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citations and punctuation omitted.) *Latson v. Boaz*, 278 Ga. 113, 113-114 (598 SE2d 485) (2004).

trade secrets. The Georgia Trade Secrets Act of 1990, OCGA § 10-1-760 et seq., authorizes recovery of damages for misappropriation of information "which is not commonly known by or available to the public," which "[d]erives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use," and which "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." OCGA §§ 10-1-761 (4) (A), (B); 10-1-763. "Whether a particular type of information constitutes a trade secret is a question of fact." (Citations omitted.) *Camp Creek Hospitality Inns v. Sheraton Franchise Corp.*, 139 F3d 1396, 1410-1411 (IV) (11th Cir. 1998). Despite Aliengena's testimony that there was "probably nothing" Insight had which derived its competitive value from not being generally known and not being readily ascertainable by proper means, there was evidence from which a jury could find that the FactorPlus software Brewer developed for Insight satisfied the definition of a trade secret under the Act. *Essex Group, Inc. v. Southwire Co.*, 269 Ga. 553, 554-557 (1) (501 SE2d 501) (1998); *Tronitec, Inc. v. Shealy*, 249 Ga. App. 442, 449-450 (7) (a), (b), (c) (547 SE2d 749) (2001), overruled on other grounds, *Williams Gen. Corp. v. Stone*, 279 Ga. 428, 431 (614 SE2d 758) (2005); *Camp Creek Hospitality Inns v. Sheraton Franchise Corp.*, 139 F3d at 1410-1412 (IV). Furthermore, there is evidence from which the jury could find that Brewer disclosed the trade secret in violation of the Act, and that Hull, GetLoaded, and FreightCheck knowingly acquired the trade secret through improper means. Accordingly, we reverse the trial court's order to the extent that it granted summary judgment in favor of the appellees on Count 2 of the complaint. *Essex Group, Inc. v. Southwire Co.*, 269 Ga. at 557 (1); *Tronitec, Inc. v. Shealy*, 249 Ga. App. at 449-450 (7) (a), (b), (c); *Camp Creek Hospitality Inns v. Sheraton Franchise Corp.*, 139 F3d at 1410-1412 (IV).

4. Insight contends Brewer acted as FreightCheck's agent when he "breached his fiduciary duties to [Insight] by, among other things, misappropriating the corporate opportunity that was [Freight-Check]." As a result, Insight contends, the trial court erred in granting FreightCheck's motion for summary judgment on Count 4, citing *Smith v. Hawks*, 182 Ga. App. 379 (355 SE2d 669) (1987). To the extent FreightCheck can be held liable for misappropriating itself as a corporate opportunity, this count is merely a restatement of the claim set forth against FreightCheck in the breach of fiduciary duty count. See Divisions 1 and 2, supra. We affirm the trial court's ruling as to Count 4.

5. Insight contends questions of material fact remain regarding whether the appellees committed fraud by "misrepresenting that

[GetLoaded's] proposed purchase of [Insight] was to be an arms-length transaction with a good faith purchaser and disinterested seller." As a result, Insight contends, the trial court erred in granting the motion for summary judgment on Count 6 of the complaint.

> The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff. For an action for fraud to survive a motion for summary judgment, there must be some evidence from which a jury could find each element of the tort.

(Citation omitted.) *Tharp v. Vesta Holdings I, LLC*, 276 Ga. App. 901, 904-905 (1) (d) (625 SE2d 46) (2005).

It is undisputed that Aliengena learned about the circumstances of the creation of FreightCheck and the relationship among the appellees before Hull sent the March 5, 2004 letter of intent offering to purchase Insight. While the purpose of the fraud was allegedly "to induce Aliengena to sell [Insight] at a depressed price," Aliengena did not rely on the appellees' misrepresentations and agree to the deal. In the absence of evidence of justifiable reliance, the appellees are entitled to judgment as a matter of law on Count 6 of the complaint. *Tharp v. Vesta Holdings I, LLC*, 276 Ga. App. at 904-905 (1). The trial court's judgment in this regard is affirmed.

6. Insight contends questions of material fact remain regarding whether Hull, GetLoaded, and FreightCheck acted with malice such that Insight's claims against them for punitive damages and attorney fees should be submitted to a jury. As to Count 8, Insight's claim for punitive damages, "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b). As discussed in Division 1, supra, Insight adduced evidence from which a jury could find Hull, Get-Loaded, and FreightCheck liable for procuring a breach of fiduciary duty. Because acting purposefully, with malice and the intent to injure, is an essential element of this tort, it follows that Hull, GetLoaded, and FreightCheck are not entitled to judgment as a matter of law on Count 8. The trial court's judgment in this regard is reversed.

As to Count 9, Insight's claim for attorney fees pursuant to OCGA § 13-6-11, "[i]t is well established as the law of this state that every intentional tort invokes a species of bad faith and entitles a person so wronged to recover the expenses of litigation including attorney fees.

Moreover, bad faith is a question for the jury to be determined from consideration of the facts and circumstances in the case." (Citations and punctuation omitted.) *Stargate Software Intl. v. Rumph*, 224 Ga. App. 873, 878 (4) (482 SE2d 498) (1997). Because the intentional torts of procuring a breach of fiduciary duty and misappropriation of trade secrets remain for the jury's consideration, see Divisions 1 and 3, "the claim for attorney fees rooted in bad faith concerning those actions should have also been left for the jury. It was premature, and thus error, to grant summary judgment on this issue altogether." Id. Accordingly, the trial court's order in this regard is reversed.

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Miller, J., concur.*

DECIDED JUNE 20, 2006 — 

*Lamberth, Cifelli, Stokes & Stout, Gary D. Stokes, Bruce E. Mitchell, Clare Michaud*, for appellant.

*Morris, Manning & Martin, Lawrence H. Kunin, Troutman Sanders, Laura D. Windsor, L. Matt Wilson, Dustin R. Thompson, John A. Lockett III*, for appellees.