699 S.E.2d 357 (2010)
PASCHAL
v.
FULTON-DeKALB HOSPITAL AUTHORITY EMPLOYEES RETIREMENT PLAN et al.
No. A10A0150.
Court of Appeals of Georgia.
July 8, 2010.
*358 Troutman Sanders, Bradley J. Harrison, Benjamin A. Gastel, Atlanta, for appellant.
Cleveland, Gamble & Gilbreath, Helen N. Cleveland, Atlanta, for appellees.
PHIPPS, Presiding Judge.
Helen M. Jones Paschal appeals the grant of summary judgment to the Fulton-DeKalb Hospital Authority Employees Retirement Plan and the Executive Committee of the Board of Trustees of the Fulton-DeKalb Hospital Authority (collectively, the Committee) on her claims for breach of contract and breach of fiduciary duty related to the denial of her claim for disability benefits. Finding no error, we affirm.
*359 Summary judgment is proper where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1] On appeal from summary judgment, we conduct a de novo review, construing the evidence and all reasonable conclusions and inferences drawn therefrom in the light most favorable to the nonmovant.[2]
So viewed, the evidence demonstrated that Paschal had worked for Grady Health Systems (Grady) as a nurse. While so employed, she participated in a retirement plan established by the Fulton-DeKalb Hospital Authority and administered by a committee that was the predecessor-in-interest to the Executive Committee of the Board of Trustees. The retirement plan provided for payment of benefits under certain circumstances to participants who became disabled. Pertinently, the version of the retirement plan in effect when Paschal's employment with Grady ended[3] provided:
SECTION VIIDISABILITY INCOME
7.1 In the event of disability (as hereinafter defined in Paragraph 7.2) of an active Participant prior to his or her Normal Retirement Date, the Participant shall be eligible for Disability Income in accordance with this Section VII, in lieu of any other Retirement Income provided by the Plan.
7.2 Subject to [a paragraph not at issue in this case], a Participant shall be deemed to be disabled as of the date the disabling event occurred provided the Participant subsequently receives disability benefits under the Federal Social Security Act on account of the disabling event. . . .
7.3 A Participant, upon retirement under the provisions of this Section, shall receive an annual Disability Income payable in monthly installments, commencing on his or her Disability Income Date, payable on the first day of each month thereafter during the Participant's lifetime and continued disability in accordance with paragraph 7.8 of the Plan.
Under the plan, the "Disability Income Date" on which a participant was to begin receiving disability payments was calculated based upon the participant's "Disability Date," which was "the date determined by the Committee to be the date on which a Participant's disability commenced in accordance with Section VII."
Paschal sustained various physical injuries while at work, for which she had surgery. She testified in an affidavit that, by January 1994, her physical capabilities were "greatly diminished," that she was "constantly in extreme pain," and that she was unable to do her job at Grady. While still employed, she inquired with the human resources department about retiring early due to disability and was told she did not qualify.
Grady terminated Paschal's employment on June 14, 1994, citing performance deficiencies as the cause. Following her termination, Paschal made several attempts to determine from Grady's human resources department whether she was eligible for disability benefits under the retirement plan. She was told that she was not eligible. In September 1995, she received a letter from Grady setting forth a procedure for applying for her "vested benefits" under the retirement plan and indicating that, if she followed that procedure, her monthly benefits would begin on August 1, 2010, her normal retirement date under the retirement plan.
In November 1995, Paschal was diagnosed with a disabling psychological condition. She applied for Social Security disability benefits, and on February 6, 1997, the Social Security Administration issued an award based upon its finding that Paschal had become disabled on June 14, 1994 (the date of her termination *360 from Grady) and approved her claim for Social Security benefits retroactive to that date.
In 2003 and 2004, Paschal unsuccessfully tried to obtain an explanation of her retirement plan benefits and a copy of the plan from Grady's benefits department. Paschal stated in her affidavit that she believed Grady had given her inconsistent information and refused to respond to her requests for additional clarification about her right to disability benefits under the retirement plan.
In an October 23, 2006 letter to the Committee, Paschal demanded to be paid disability benefits under the retirement plan. She claimed payments should have begun on January 1, 1995 pursuant to Paragraph 7.3 of the plan. This was the first point at which Paschal informed the Committee about the 1997 Social Security award. The Committee responded on February 15, 2007, denying Paschal's claim for disability benefits on the ground that the "disabling event"her psychological conditionoccurred after her employment was terminated. Paschal sought an administrative appeal of this denial, which the Committee deemed untimely and refused to hear. On January 18, 2008, Paschal filed her action for breach of contract and breach of fiduciary duty.
1. The trial court granted summary judgment to the Committee on Paschal's breach of contract claim on the ground that the six-year statute of limitation set forth in OCGA § 9-3-24 barred that claim. Paschal contends that this was error because the limitation period did not begin to run on her claim until the Committee denied her benefits in 2007. We disagree.
Under OCGA § 9-3-24, "[a]ll actions upon simple contracts in writing shall be brought within six years after the same become due and payable." In the context of a claim for benefits brought under an insurance contract, Georgia courts have held that this limitation period begins to run when the claimant becomes entitled to receive benefits under the contract terms.[4] Thus, in Banks v. Aetna Life Ins. Co.[5] we held that the statute of limitation governing contract actions barred an insured's claim for disability payments under an insurance policy where the insured waited nine years before making a demand for payment of those benefits. We explained the reason for this rule as follows:
Our view is that to hold [the insured's] contention good would be to destroy the object and purpose of the statute of limitations in cases like the one we are considering; for if the plaintiff, with the right to make her proofs of disability and demand for payment on the very day she was disabled, could without reason or excuse postpone making such proofs and demand for more than nine years from the time she was disabled, and then have six additional years within which to sue, there appears to be no valid reason why she could not have prevented the attaching of the statute of limitations to her action indefinitely, by the simple expedient of postponing making her proofs of disability and demand for payment.[6]
The Supreme Court of Georgia expressed a similar rationale in Bryant v. Allstate Ins. Co.,[7] holding that to allow an insured the discretion to set the statute of limitation in motion at some time beyond when the insured first was able to make a claim for the benefits "would frustrate the very purpose of statutes of limitation to provide finality in litigation. Without some limitation, an insured could delay suit indefinitely before asserting this right to retroactive coverage."[8]
*361 Under Paschal's retirement plan, disability benefits became due and payable to her once she satisfied the conditions precedent for those benefits, namely that she had been an active participant in the plan at the time of her disability (under Paragraph 7.1), and that she subsequently received Social Security benefits on account of the disabling event (under Paragraph 7.2). Thus, applying the rule used in Georgia to govern claims for benefits under insurance contracts, the six-year statute of limitation began to run when Paschal received the Social Security award in 1997, because at that point she satisfied the conditions precedent for disability benefits and those benefits became due and payable under the retirement plan. Because Paschal did not make a claim for those benefits to the Committee until 2006, or bring suit on that claim until 2008, her claim for benefits is barred by the statute of limitation.
Paschal, however, urges us instead to follow as persuasive authority federal court decisions holding that a cause of action for benefits pursuant to a retirement plan governed by the Employee Retirement Income Security Act (ERISA)[9] accrues, and the statute of limitation on such a claim begins to run, "when the plan administrator formally denies the claim for benefits."[10] ERISA sets forth a claims procedure for plans governed thereunder, which includes the requirement of "adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant."[11] But the retirement plan in this case was not governed by ERISA,[12] and the terms of the plan in effect when Paschal's employment was terminated and when she received her Social Security award did not include any procedure for making a claim or having a claim "formally denied." Moreover, the federal court decisions addressing ERISA do not apply Georgia law governing the accrual of actions.[13] We are not convinced that we should disregard Georgia law governing the accrual of claims for benefits in the analogous insurance context in favor of federal law based upon procedural requirements in ERISA claims that did not exist here.
Rather, we find that the policy consideration of providing finality in litigation, expressed in insurance cases such as Bryant[14] and Banks,[15] applies to the circumstances here. We discern no reason why, under Georgia law, a person whose disability benefits are due and payable under a retirement plan should have the discretion to set the statute of limitation in motion on a claim for those benefits, when a person whose disability benefits are due and payable under an insurance policy may not.
Accordingly, because Paschal brought her claim for benefits under the retirement plan more than six years after those benefits became due and payable, the trial court did not err in determining that the statute of limitation barred her contract claim seeking those benefits.
2. Paschal argues that the court erred in failing to find that the statute of limitation on her breach of contract claim should have been tolled under OCGA § 9-3-96, which provides: "If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." "The fraud which tolls a statute of limitation must be such actual fraud as could *362 not have been discovered by the exercise of ordinary diligence."[16]
The evidence, viewed in the light most favorable to Paschal, showed that, prior to receiving her 1997 Social Security award, she was told by persons in Grady's human resources and benefits departments that she was not entitled to disability benefits and that her vested benefits were scheduled to begin in 2010. Assuming arguendo that these comments could be attributed to the Committee for purposes of tolling the statute of limitation, they did not show that the Committee engaged in a "separate independent actual fraud" that deterred Paschal from making her benefits claim.[17] Under the plan's terms, Paschal was not entitled to receive disability benefits before obtaining her Social Security award, but she could receive certain vested retirement benefits on a future date. The evidence that, in 2003 and 2004, Grady did not respond to Paschal's attempts to obtain a copy and an explanation of the retirement plan also did not demonstrate actual fraud on the part of the Committee.[18] Moreover, the record shows that, notwithstanding any action or inaction on the part of the Committee, Paschal was aware in 1997 of the facts that she contends gave rise to her claim for disability benefitsthe fact of her disability, and the fact that she received the Social Security award.[19] Even if the Committee had a duty to notify Paschal when she became entitled to pursue a disability claim under the retirement plan,[20] there is no evidence that the Committee was aware that Paschal had begun receiving Social Security benefits, thereby triggering her eligibility for the disability benefits. The court did not err in failing to find the statute of limitation tolled under OCGA § 9-3-96.
3. Paschal contends that the court erred in granting summary judgment to the Committee on her claim for breach of fiduciary duty. In that claim, Paschal asserted that the Committee failed to act in her best interest because it did not advise her of her rights under the retirement plan or notify her that she could seek disability benefits thereunder, and it did not fairly apply the terms of the plan in its handling of her claim. "Establishing a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach."[21]
Assuming, without deciding, that the Committee owed Paschal a fiduciary duty,[22] the evidence did not demonstrate that any breach by the Committee of such a duty proximately caused Paschal's alleged damage (namely, her failure to receive disability benefits). The Committee's alleged breaches that occurred after the expiration of the statute of limitation on her disability claim could not have proximately caused Paschal to lose those benefits, because her claim to them was already barred. As discussed above, the evidence did not support Paschal's assertion that she was misinformed about her eligibility for disability benefits in the time period before she received her Social Security award, because during that period, under the *363 terms of the retirement plan, she was not entitled to disability benefits. And while the evidence reflected that, in 2003 and 2004, persons in Grady's benefits department failed to return Paschal's telephone calls or respond to her written request for a copy of the retirement plan, there is no evidence that these actions prevented her from presenting her disability claim to the Committee, so as to proximately cause her claimed damage. Accordingly, we find no error in the trial court's grant of summary judgment to the Committee on this claim.[23]
Judgment affirmed.
MILLER, C.J., and JOHNSON, J., concur.
NOTES
[1] OCGA § 9-11-56(c).
[2] O'Dell v. Pine Ridge Investments, 293 Ga.App. 696, 667 S.E.2d 912 (2008).
[3] Unless otherwise noted, all references to the retirement plan in this opinion refer to the version of the retirement plan in effect at the time of Paschal's termination. That version remained in effect until January 1, 2002, when it was amended and restated. The 2002 version of the retirement plan provided that the rights of employees terminated before the effective date would be governed by the retirement plan in effect at the time of their termination, but that any accrued benefits under the retirement plan would be administered and distributed in accordance with the version of the retirement plan currently in effect.
[4] See, e.g., Bryant v. Allstate Ins. Co., 254 Ga. 328, 330-331, 326 S.E.2d 753 (1985) (claim for optional benefits under vehicle insurance policy must be brought within six years of date of accident, when such claim first could be made); Cotton States Mut. Ins. Co. v. Atkinson, 120 Ga. App. 695, 696-697, 172 S.E.2d 188 (1969) (claim for benefits under liability insurance policy must be brought within six years of lawsuit filed against insured); Prudential Ins. Co. v. Sailors, 69 Ga.App. 628, 631-632, 26 S.E.2d 557 (1943) (claim for disability benefits under insurance policy must be brought within six years of time at which he could have made benefit payable by submitting proof of disability to insurer).
[5] 56 Ga.App. 760, 194 S.E. 34 (1937).
[6] Id. at 762, 194 S.E. 34.
[7] Supra.
[8] Id. at 331, 326 S.E.2d 753 (citation and footnote omitted).
[9] 29 USC § 1001 et seq.
[10] Massengill v. Shenandoah Life Ins. Co., 459 F.Supp.2d 656, 661 (W.D.Tenn.2006) (citations omitted).
[11] 29 USC § 1133(1).
[12] See Monroe v. Bd. of Regents, etc. of Ga., 268 Ga.App. 659, 661(1), 602 S.E.2d 219 (2004) (plans established by governmental entities are expressly exempt from ERISA).
[13] See Bennett v. Fed. Mut. Ins. Co., 141 F.3d 837, 838 (8th Cir.1998) (in claim for ERISA benefits, although court "looks to state statutes of limitations, federal law determines when the cause of action accrues") (citations omitted).
[14] Supra.
[15] Supra.
[16] Bahadori v. Nat. Union Fire Ins. Co., 270 Ga. 203, 205(3), 507 S.E.2d 467 (1998) (citations and punctuation omitted).
[17] Shipman v. Horizon Corp., 245 Ga. 808, 809, 267 S.E.2d 244 (1980).
[18] Compare Perkins v. Aetna Cas., etc. Co., 147 Ga.App. 662, 664(4), 249 S.E.2d 661 (1978) (employer's "clearcut affirmative misrepresentations" on three occasions to employee and other employees regarding availability of workers' compensation constituted fraud that tolled statute of limitation).
[19] See Columbia County v. Branton, 304 Ga.App. 149, 153(2), 695 S.E.2d 674 (2010); Hamburger v. PFM Capital Mgmt., 286 Ga.App. 382, 389(4), 649 S.E.2d 779 (2007).
[20] See generally Shipman, supra ("mere silence" concerning the availability of the underlying action may be sufficient to toll the statute of limitation in a contract action if a relationship of trust and confidence between the parties gave rise to a duty to disclose).
[21] SunTrust Bank v. Merritt, 272 Ga.App. 485, 489(2), 612 S.E.2d 818 (2005) (punctuation and footnote omitted).
[22] See generally Monroe, supra at 661-662(1), 602 S.E.2d 219 (discussing Georgia law regarding formation of fiduciary or confidential relationships, and declining to reach issue in context of employee benefit plan exempt from ERISA requirements).
[23] See Ludwig v. Ludwig, 281 Ga. 724, 726(4), 642 S.E.2d 638 (2007) (trial court did not err in granting summary judgment on claim for breach of fiduciary duty where evidence failed to show that alleged breach proximately caused claimed damage).